**STATE of Missouri, Respondent,**

v.

**Stanley JOHNSON, Appellant.**

**No. ED 93246.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 2, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 2010.

Application for Transfer Denied Jan. 25, 2011.

Craig A. Johnston, Columbia, MO, for appellant.

Chris Koster, Terrence M. Messonnier, Jefferson City, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Judge.

Stanley Johnson (Defendant) appeals the trial court's judgment and sentence after a jury convicted him of first-degree murder and forcible rape. We affirm.

## Background

In May 1994, Lela Warner was raped and strangled to death in her home in St. Louis County. Police collected evidence at the scene and on the victim including hair, blood, semen, two blood-stained towels, finger prints, and a palm print on the back door. The assailant's DNA profile was entered into the Combined DNA Index System (CODIS). The case remained unsolved until 2006 when the CODIS database generated a "hit" matching the crime scene DNA evidence to Defendant, who was then incarcerated on an unrelated conviction. Police obtained a search warrant compelling Defendant to provide a buccal swab, from which further testing confirmed that Defendant's DNA was consistent with that found on Ms. Warner.

In September 2006, the State charged Defendant with first-degree murder and forcible rape. Defendant filed a motion under the Uniform Mandatory Disposition of Detainers Law (UMDDL) demanding that his case be tried within 180 days. Defendant's court-appointed co-counsel entered their appearance December 22 and requested additional time to prepare for trial. Defendant objected to the delay, so the trial court rejected counsel's request and set the trial for March 2007. Counsel sought a writ of prohibition to prevent the trial court from convening the trial as scheduled. The Supreme Court of Missouri granted the writ, holding that, by exercising his right to counsel, Defendant had ceded to counsel the authority to seek reasonable continuances, which are allowed for good cause under the UMDDL. *State ex rel. Wolfrum v. Wiesman*, 225 S.W.3d 409 (Mo.2007).

In the months prior to trial, Defendant frequently expressed dissatisfaction with counsel and filed numerous motions to discharge them and represent himself. In

July 2007, Defendant's original counsel withdrew, and the court appointed new counsel. Defendant then complained about his new counsel and filed additional motions to discharge them and represent himself. In October 2008, the trial court held a hearing, conducted a thorough colloquy with Defendant, and ultimately denied Defendant's motion, finding that Defendant's request was equivocal and unknowing and that Defendant was incapable of conducting himself appropriately in the courtroom. Defendant continued to complain that his attorneys were not following his strategic instructions or communicating with him frequently enough, and he repeatedly asked the court to discharge them and either appoint new counsel or allow him to proceed *pro se*. On the morning of trial, the court denied all pending motions, including Defendant's requests for different counsel or self-representation.

The trial was held April 15 to 22, 2009. Before jury selection, the trial court asked Defendant if he would be able to conduct himself appropriately in the courtroom. Defendant resumed his complaints about counsel, claimed that he wasn't getting a fair trial, and requested leave from the proceedings. The trial court granted Defendant's request and conducted a similar colloquy each morning of trial, in response to which Defendant lodged the same complaints and waived his right to be present. The trial proceeded in Defendant's absence.

At the close of the evidence, Defendant's counsel offered jury instructions including lesser offenses of second-degree felony murder and conventional second-degree murder. The trial court instructed the jury on the former but rejected the latter. After four hours of deliberation, the jury returned verdicts finding Defendant guilty

of first-degree murder and forcible rape. The trial court sentenced Defendant, as a prior and persistent offender, to consecutive prison terms of life without the possibility of parole for first-degree murder and thirty years for forcible rape.

Defendant appeals and asserts that the trial court erred by (1) denying his motions to dismiss for violation of his right to a speedy trial under the UMDDL; (2) denying his motions to proceed *pro se*; (3) rejecting his jury instruction on the lesser included offense of conventional second-degree murder; and (4) denying his requests for new counsel. Additional facts are discussed below as relevant to the issues on appeal.

### Discussion

I. *Speedy trial under UMDDL*

First, Defendant asserts that the trial court erred in denying his motion to dismiss because the court lost jurisdiction before the case went to trial. Our review is *de novo*. *State v. Taylor*, 298 S.W.3d 482, 503 (Mo.2009). The UMDDL permits an incarcerated defendant to prompt final disposition of an untried indictment within 180 days, or longer for good cause, lest the trial court lose jurisdiction and be required to dismiss the cause with prejudice. When Defendant invoked it,[1] section 217.460 RSMo 2000 stated:

> Within one hundred eighty days after the receipt of the request and certificate, pursuant to sections 217.450 and 217.455, by the court and the prosecuting attorney or within such additional necessary or reasonable time as the court may grant, for good cause shown in open court, the offender or his counsel being present, the indictment, information or complaint shall be brought to

1. In 2009, the General Assembly amended the statute so as to mandate dismissal only when

the trial court finds a violation of the defendant's constitutional right to a speedy trial.

trial. The parties may stipulate for a continuance or a continuance may be granted if notice is given to the attorney of record with an opportunity for him to be heard. If the indictment, information or complaint is not brought to trial within the period, no court of this state shall have jurisdiction of such indictment, information or complaint, nor shall the untried indictment, information or complaint be of any further force or effect; and the court shall issue an order dismissing the same with prejudice.

The statute provides three exceptions permitting the trial court to grant additional necessary or reasonable time beyond 180 days: (1) for good cause shown in open court, the offender or his counsel being present; (2) the parties stipulate to a continuance; or (3) notice is given to the attorney of record with an opportunity to be heard. Section 217.460; *Wolfrum v. Wiesman*, 225 S.W.3d at 412, n. 7.

Defendant filed his UMDDL request September 25, 2006. His trial commenced 933 days later on April 15, 2009. Defendant asserts that the additional time did not meet the exceptions to toll the statutory period. We consider each delay in chronological order.

*Defense counsel's first request for continuance and related writ proceedings*

The parties agree that 105 days accrued from the filing of Defendant's UMDDL motion until defense counsel first requested a continuance January 19, 2007. As previously mentioned, the trial court denied counsel's request due to Defendant's objections, so, on January 29, counsel sought a writ of prohibition to prevent the trial court from proceeding to trial. This court denied the petition February 1, and counsel appealed to the Supreme Court of Missouri February 5. The Supreme Court issued its preliminary writ February 16 ordering the trial court to take no further

action except to grant counsel's request for additional time.

■■■ Defendant argues that, between January 19 and February 16 (27 days), the clock continued to run because no court order was in place to stop it. The State counters that the time should be excluded because a continuance should have been granted in the first instance, as the Supreme Court held in *Wolfrum*. In support of its position, the State cites *Fischer v. Brancato*, in which this court noted that an "appellate decision becomes the law of the case in a subsequent proceeding in the same cause and precludes re-examination of issues ... decided by the appellate court's opinion either directly or by implication." 174 S.W.3d 82, 86 (Mo.App.2005). Clearly, this rule prohibits re-examination of the central issues resolved in *Wolfrum*, namely defense counsel's authority to request, and the trial court's discretion to grant, a continuance over Defendant's objection. We are not persuaded, however, that *Wolfrum* prescribes by implication the tolling of the UMDDL clock retroactively based on the outcome. Nonetheless, while neither party offers instructive authority, generally any delay resulting from the defendant's affirmative action is excludable from the 180 day period. *Lee v. State*, 97 S.W.3d 9, 14 (Mo.App.2002). Thus, the times during which counsel's writ petitions were pending before this court (January 29 to February 1) and the Supreme Court (February 5 to 16) are excluded. This is consistent with other speedy trial authority excluding time during which trial proceedings are stayed pending interlocutory appeals. See for example *U.S. v. Pete*, 525 F.3d 844 (9th Cir.2008) (holding that the clock resumes upon the district court's order but tolls upon filing of notice of interlocutory appeal). As such, 12 days accrued during this period (January 20–28 and February

2–4), for a new total of 118. The parties do not dispute that the clock was then tolled from February 16, when the Court issued its preliminary writ, until the Court issued its mandate June 26.

*From mandate to new counsel's request for continuance*

■ Next, the parties dispute whether the clock resumed as of the Court's mandate June 26 until July 11 (15 days) when the court appointed new counsel and granted them additional time to prepare for trial. Neither party offers authority for its position. The State suggests that *Wolfrum* implicitly approved original counsel's request for an indefinite extension, which was unaffected by the June 26 mandate. We agree. The Supreme Court's preliminary writ ordered the trial court to take no further action except to grant counsel's request for additional time to prepare for trial. The Court's subsequent opinion and mandate made the writ absolute, thereby reinforcing its earlier order to grant additional time. As such, the clock remained tolled from June 26 to July 11 and beyond, to January 18, 2008, pursuant to the continuance granted new counsel.

*Psychiatric evaluation*

■ In the interim, in November 2007, defense counsel asked the trial court to appoint a psychiatrist to evaluate Defendant's mental competency to stand trial, his mental state at the time of the offense, mitigation, and possible mental retardation. Section 552.020 requires a trial court, whether on motion by a party or on its motion, to order a mental examination when the court has reasonable cause to believe that an accused lacks mental fitness to proceed. Here, defense counsel's motion enumerated multiple bases for its request: (1) counsel's own observations of Defendant's behavior in meetings and in the courtroom; (2) Department of Corrections records suggesting Defendant's use of psychotropic medication; (3) Defendant's refusal to meet or cooperate with counsel; (4) Defendant's refusal to meet with psychiatric experts in the preparation of his defense; (5) medical records of a past brain injury; and (6) school records indicating an IQ of 60.

On November 30 the trial court ordered the appointment of a psychiatrist to evaluate Defendant,[2] and on December 31 the court issued a more detailed order requiring specific findings, opinions, and recommendations by the examiner as required by section 552.020.3. The record reveals that Defendant's refusal to submit to the evaluation caused considerable delay in its completion. In a letter dated March 2008, the Department of Mental Health explained that "This evaluation has been delayed because most of the examiners who do these evaluations had been retained by the defense to evaluate Mr. Johnson, but Mr. Johnson has consistently refused to cooperate." Defendant refused to cooperate during another attempt in April. Finally in June, Defendant's evaluation was conducted over the course of three visits, and the examiner's final report was submitted to the court July 10.

---

**2.** Though the trial court issued its order days after defense counsel's motion, the court purports to act on its own motion. Either way, the record fully supports the court's order and its underlying finding of reasonable cause pursuant to section 552.020. Aside from the bases stated in counsel's motion, the record is replete with Defendant's handwritten *pro se* letters to the court, the substance of which provides an independent basis for the court to have ordered the evaluation *sua sponte.* The trial court was well within its discretion to order the evaluation.

We find no basis to credit Defendant's UMDDL count the time needed to evaluate, for his own benefit, his mental capacity at the time of the offense and his present competence to stand trial. Absent precedent specific to the UMDDL, we take guidance from other speedy trial authority instructing that time spent for mental examinations is weighed against the defendant. See for example *State v. Farris,* 877 S.W.2d 657, 660 (Mo.App.1994); and *U.S. v. McGhee,* 532 F.3d 733 (8th Cir.2008). The clock remained tolled to July 10, 2008.

*Continuance to November 12, 2008*

■ Meanwhile, in the spring of 2008, defense counsel requested additional time not only for the completion of the psychiatric evaluation but also for further DNA testing by its own experts. The court found good cause to grant additional time, and moreover the State stipulated to it. On April 3, 2008, the court issued its order granting more time and setting the case for trial November 12. Defendant challenges both the reasonableness of the delay and its validity for UMDDL purposes because good cause was not shown "in open court."

We reject Defendant's first contention that additional time was unreasonable here, given that Defendant's refusal to undergo psychiatric evaluation engendered much of the delay. And given the importance of DNA evidence to the State's case, we see no reason to question the trial court's determination that further DNA testing by defense experts constituted good cause. It was well within the trial court's discretion to grant additional time. As is the case here, in *State v. Taylor,* defense counsel requested, over the defendant's objections, continuances to adequately prepare for a capital murder trial. 298 S.W.3d 482 (Mo.2009). Though the trial was held 30 months after the defendant filed his UMDDL motion, the Court

found no speedy trial violation. "Given the complexity of the trial and the amount of preparation and investigation required, counsel established sufficient grounds for good cause for the delay, and the additional time ensured that [defendant] received effective assistance of counsel." *Id.* at 504.

Regarding Defendant's second complaint, that good cause was not shown "in open court," no hearing was required here in that the parties stipulated to the continuance as contemplated by the third exception under section 217.460. This continuance is properly excepted from the UMDDL count.

*Continuance to April 15, 2009*

■ Finally, on October 17, 2008, defense counsel requested another continuance to complete further DNA testing on newly obtained towel swatches and to complete a second psychiatric evaluation due to Defendant's previous obstinacy and the potential utility of further information in the penalty phase. The State did not object, and the court found good cause, shown in open court, to continue the matter. Though again Defendant challenges the reasonableness of the additional time granted, the record shows that counsel established sufficient grounds for good cause for the delay, and the additional time ensured that Defendant received effective assistance of counsel. We again find no basis to second-guess the court's finding of good cause. This continuance, too, is properly excepted from the UMDDL count.

Excepting all continuances properly granted as discussed above, the remaining time did not exceed 180 days. There was no UMDDL violation, and therefore the trial court retained jurisdiction. Point denied.

## II. *Right of self-representation*

 Defendant also asserts that the trial court erred by denying his request to discharge counsel and proceed *pro se.* The Sixth Amendment right to counsel "implicitly embodies a correlative right to dispense with a lawyer's help." *State v. Black,* 223 S.W.3d 149, 153 (Mo.2007) (citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). This right is applicable to the states by way of the Due Process Clause of the Fourteenth Amendment and prevents a state from forcing upon a defendant unwanted counsel. *Id.* Denial of a defendant's right of self-representation is structural error and therefore is not amenable to harmless error analysis. *Id.* There is no discretion for a trial court to force an attorney upon a competent defendant who makes a (1) timely, (2) unequivocal, (3) knowing, and (4) intelligent waiver of the right to counsel. *Id.* To the extent appellate review involves a determination of whether these factors were met to constitute a valid waiver, it is *de novo. U.S. v. Kind,* 194 F.3d 900, 903–904 (8th Cir.1999). However, a defendant's right of self-representation is not absolute; it can be terminated when the defendant engages in serious obstructionist misconduct. *U.S. v. Edelmann,* 458 F.3d 791, 808–809 (8th Cir.2006) (quoting *Faretta* at 834, n. 46, 95 S.Ct. 2525). On that determination, we review for an abuse of discretion. *Id.*[3]

 Here, neither party challenges Defendant's competence to waive counsel, and the psychological evaluation contained in the record confirms that he was capable of making decisions with respect to counsel. There is also no question that Defendant's request was timely. He filed the first of many requests March 8, 2008, over one year prior to trial. The parties dispute, however, whether Defendant's request was unequivocal, knowing, and intelligent. "This standard is met when the trial court specifically informs the defendant of the dangers and disadvantages of self-representation, or if the entire record evidences that the defendant knew or understood the disadvantages." *United States v. Ladoucer,* 573 F.3d 628, 633 (8th Cir.2009). "The court is not required to ensure that the defendant is capable of representing himself as well as a trained and experienced lawyer, only that he understands the risks involved in representing himself and that he has knowingly and intelligently chosen self-representation." *Id.*

 The record contains multiple handwritten letters to the trial court and countless transcript excerpts where Defendant complains about his lawyers and asks to proceed *pro se.* The trial court found Defendant's request equivocal in that he conflated it with complaints of counsel.

**3.** Some cases state that the right of self-representation is unqualified when demanded before trial and the court's discretion to deny it based on a defendant's behavior vests when the trial commences. *United States v. Wesley,* 798 F.2d 1155 (8th Cir.1986). While we agree that denial of the right of self-representation cannot be justified on grounds of *anticipated* disruptive behavior (*e.g., People v. Freeman,* 76 Cal.App.3d 302, 142 Cal.Rptr. 806 (1977)), we do not interpret the law to mandate the futile and potentially prejudicial exercise of permitting an individual with Defendant's pre-trial courtroom track record (further described *infra*) to advance to jury selection for another disruptive display before the judge may finally revoke his *pro se* status. Moreover, even such a rigid interpretation fails Defendant here. Even accepting *arguendo* that Judge Weisman's ruling of October 2008 was premature, Judge Hartenbach's ruling on the morning of trial coincided with commencement of the trial. At that time, the ample pre-trial record and Judge Hartenbach's own personal interaction with Defendant were sufficient to support his decision to deny Defendant's renewed motion to proceed *pro se.*

Specifically, toward the end of the *Faretta* colloquy,[4] when the court asked, "[do] you truly want to represent yourself ... or ... you're just really unhappy with these attorneys?" Defendant replied that he was "very unhappy with the attorneys" and "[did not want] to be represented by these people." But at the beginning of the colloquy, in response to the same question, he stated "I want to represent myself." We do not agree that Defendant's expression of dissatisfaction with counsel dilutes the clear and repeated invocation of his right to self-representation. Indeed, one would expect the two to coincide. Rarely would a defendant seek to discharge an attorney with whom he was satisfied. Viewed in its entirety, the record demonstrates Defendant's unequivocal desire to waive his right to counsel and represent himself.

█ The trial court also found Defendant's request unknowing and unintelligent in that Defendant was mistaken about one consequence of self-representation, namely that Defendant would not have a right to assert a claim of ineffectiveness of standby counsel. Again here, we do not find that Defendant's misconception on this point rendered his waiver unknowing and unintelligent. The trial court took pains to educate Defendant and correct his understanding on that point. More generally, a review of the lengthy colloquy reveals that Defendant answered affirmatively when asked if he understood all of the following: the court system; the role of the judge and prosecutor; the jury selection process, including his rights under *Batson v. Kentucky;* his right to counsel; his right to a jury trial; the severity of the charges; the inadvisability of self-representation in a capital murder trial; the likelihood of conviction and the possibility of the death penalty; the expectation of compliance with rules of evidence and procedure; general concepts of the presentation of evidence, including objections and hearsay; the mechanism of jury instructions, including those on lesser included offense; and generally the risk that, in representing himself, Defendant might act or omit to his own detriment. This record does not support a finding that Defendant's request was unknowing and unintelligent.

█ However, even when the waiver of counsel comports with the requirements of *Faretta,* "the right of self-representation is not a license to abuse the dignity of the courtroom." *U.S. v. Mosley,* 607 F.3d 555, 558 (8th Cir.2010). A defendant is not entitled to use the right of self-representation as a tactic for delay, disruption, distortion of the system, or manipulation of the trial process. *Id.* "The government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id. Mosley* is instructive. There, the magistrate judge initially allowed the defendant to represent himself but revoked the right and ordered a competency examination after the defendant filed incoherent *pro se* pleadings. The defendant "continued a pattern" of disruption and unresponsiveness in pre-trial proceedings. He repeatedly asserted his right to waive counsel and represent himself, but the magistrate judge denied all motions. At trial, the defendant reasserted his right before the district court and was unsuccessful. The district court explained that it had reviewed the pre-trial proceedings and noted that the defendant "wanted to talk ... about everything but this case." *Id.* at 559. The Eighth Circuit took the district court's statement as an adoption of the magistrate judge's conclusion that the defendant could not proceed *pro se* because he was unwilling to participate in the

4. Conducted pursuant to section 600.051.1 RSMo.

proceedings. *Id.* Ultimately the Eighth Circuit held that:

> "Mosley's obstreperous conduct provided sufficient grounds for the district court to terminate and disallow Mosley's self-representation. Mosley's behavior interfered with pretrial proceedings and delayed the trial. There was good cause to believe that Mosley would continue to disrupt the proceedings.... Mosley essentially forfeited his right to represent himself by engaging in conduct that obstructed the proceedings against him."
> *Id.*

■■■ As described by the Eighth Circuit, the record in *Mosley* resembles the record before us as relevant to Defendant's obstructionist behavior and the procedural posture of the case at the time when the court denied the right of self-representation based on pre-trial conduct. Defendant sent numerous handwritten (and occasionally typed) letters to the court impugning his lawyers, the State, law enforcement and corrections officers, and the trial judge himself. As previously mentioned, Defendant's counsel felt compelled to request, and the trial court ordered, a psychiatric evaluation due to what counsel described as Defendant's "bizarre" and "unruly" behavior and "nonsensical and rapidly tangential" statements. In September 2007, a hearing was held on the State's motion to order Defendant to provide finger and palm prints to compare with those found at the scene of the crime. Defendant previously had refused to comply with such orders, and here he continued to object, accusing experts of doing "something illegal" with the prints, complaining of cruel and unusual punishment, demanding probable cause, and indicating that he would continue to resist future attempts to obtain his prints. During another pre-trial hearing, in October 2008, Defendant's behavior was even more bel-

ligerent. He again impugned the motives of both his lawyers and the trial judge and ranted incessantly, weaving from one topic to another, in what the judge described as a tirade. The judge cautioned:

> Now wait. Now wait. We have to proceed in an orderly fashion. I asked you a very simple question and you went into a tirade ... If you proceed in this fashion, you're telling me that you're really not capable of following the court's procedures, and I will not allow you to represent yourself under those circumstances because there is no way that a fair trial can be conducted if you're acting out all the time as you have started doing, as you have done every time you appear in court here.

Even after this warning, Defendant continued to interrupt the court, arguing that the Supreme Court of Missouri wrongly decided *Wolfrum v. Weisman.* Again, the court explained, "If I can't stop you from talking, there's no way if you represented yourself that we would ever be able to conduct this trial in an orderly fashion.... I can guarantee you that within fifteen minutes after we start the trial of this case, I'm going to have to disqualify you and have [back-up counsel] take over." Defendant retorted that the "Supreme Court hasn't gave you no right to stop me from—prohibiting my right to a speedy trial. You're doing this, your honor."

After further haranguing, the court swore in Defendant and proceeded with the *Faretta* colloquy. In addition to finding that Defendant's waiver of counsel was not unequivocal, knowing, or intelligent, the trial court also found, in essence, that Defendant had waived his right of self-representation by engaging in serious obstructionist behavior:

> The court finds that, by your conduct both during this inquiry and during all previous proceedings that have been

held before me, that you have unequivocally established that you ... have and will continue to fail and refuse to follow the proper procedures and have and will continue to engage in improper conduct including arguing with the court and refusing to abide by the rulings of the court and conducting yourself in an uncivil manner during trial proceedings.

Following the court's ruling, Defendant continued to berate and interrupt the court until he was removed from the courtroom after the following exchange:

Court: This tirade has gone on long enough. I'm terminating the hearing. Based on the representations that were made by defense counsel in this case—

Defendant: Fuck you.

Court:—the court finds that there is good cause for the continuance request.

Defendant: Fuck you all.

Court: I will need to meet with counsel to try to find a future date to set this for trial because—

Defendant: Fuck you, too.

Court:—I think we need to, under the hundred and eighty day detainer law, know a future specific date. Mr. Johnson, are you leaving the courtroom?

The foregoing exchange took place during a pre-trial motion hearing before Judge Weisman, who retired in January 2008 and was succeeded by Judge Hartenbach. On the first day of trial, Judge Hartenbach referred to the incidents in pre-trial proceedings and spoke with Defendant about his willingness to behave during trial. Defendant told the judge that, "evidently you've been misinformed.... I never disturbed a courtroom to that effect and that's false information.... I don't know where he get this

from." Defendant then launched into another diatribe about his displeasure with counsel and reiterated his request to proceed *pro se.* The court denied the request, and the jury venire was brought into the courtroom to begin *voir dire.*

This record firmly supports the conclusion that Defendant forfeited his right of self-representation by engaging in serious obstructionist behavior. Recalling *Mosley,* Defendant's similarly obstreperous conduct provided sufficient grounds for the trial court to prohibit Defendant's self-representation based on his behavior in pre-trial proceedings, and there was good cause to believe that Defendant would continue to disrupt the trial.

Point denied.

### III. *Jury instruction*

 In his third point, Defendant asserts that the trial court erred when it refused to submit to the jury Defendant's proposed instruction for conventional second-degree murder. A trial court is obligated to instruct the jury on lesser included offenses that are supported by the evidence so as to give the jury a third choice beyond either acquittal or first-degree murder. *State v. McLaughlin,* 265 S.W.3d 257, 270 (Mo.2008). The issue is not what the trial court could have done, but whether prejudice resulted. *Id.*

 Felony murder and conventional second-degree murder are both lesser included offenses of first-degree murder. Section 565.025.2($l$)(a). Both instructions may be submitted to the jury. MAI–CR 3d §§ 313.00 Note 4, 313.04 Note 3, and 313.06 Note 5. In *McLaughlin,* the trial court instructed the jury on conventional second-degree murder but not felony murder—the inverse of the present case. The Supreme Court of Missouri found no error, noting that "the trial

court could have submitted felony-murder *rather than* or in addition to conventional second-degree murder without committing error if both were supported by the evidence." 265 S.W.3d at 271. (emphasis added) So both the Missouri Approved Instructions and our Supreme Court contemplate that a trial court *may* submit one instruction without the other. Moreover, we are not convinced that the absence of the conventional second-degree murder instruction deprived the jury of the opportunity to make a factual finding on the element of deliberation. If the jury did not believe that Defendant deliberated, it could have found Defendant guilty of felony murder based on the underlying rape conviction. But instead the jury found Defendant guilty of first-degree murder, which necessarily implies a finding of deliberation. So the verdict would have been the same even if the jury had also received the conventional second-degree murder instruction. "The failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." *State v. Johnson*, 284 S.W.3d 561 (Mo.2009). (emphasis in original) The felony murder instruction was sufficient to provide the jury with a third option beyond either acquittal or first-degree murder. Defendant suffered no prejudice. Point denied.

## IV. *Change of counsel*

◼ Finally, Defendant contends that the trial court abused its discretion by denying his motions for new counsel. As a preliminary matter, Defendant notes that his lawyers—the ones whom he sought to discharge—did not preserve this issue for appeal in Defendant's motion for a new trial. Defendant therefore requests plain error review under Rule 30.20. A similar

situation existed in *State v. Black*, and our Supreme Court held that the defendant had sufficiently preserved the point through his requests of self-representation:

[T]he exercise of his right to do so cannot be dependent upon the renewal of that position by the very counsel he sought to dismiss. Similarly, a defendant does not need to endlessly renew his position or object to the presence of counsel. After Black's unequivocal and timely assertion of his right was clearly rejected, he was not required to "make fruitless motions or forego cooperation with defense counsel to preserve the issue on appeal."

223 S.W.3d at 154, citing *United States v. Arlt*, 41 F.3d 516, 523 (9th Cir.1994). Consistent with *Black*, Defendant's point here is deemed sufficiently preserved for appellate review beyond plain error. Rather, we review for abuse of discretion. "The ultimate determination as to whether appellant should have been allowed to discharge his attorney is a matter of discretion with the trial court." *State v. Boyd*, 913 S.W.2d 838, 844 (Mo.App.1995). This court will not interfere unless there has been a clear abuse of discretion, and every intendment in favor of the trial court will be indulged. *Id.*

◼ A criminal defendant has no absolute right to a particular attorney. *State v. Kent*, 637 S.W.2d 119, 122 (Mo. App.1982). To warrant substitution of lawyers, the defendant must first demonstrate justifiable dissatisfaction with appointed counsel. *State v. Denny*, 619 S.W.2d 931, 933 (Mo.App.1981). "A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defen-

dant." *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir.1991).

Here, Defendant claims that there was an irreconcilable conflict between him and his counsel and a total breakdown in the attorney-client relationship. Specifically, Defendant objected to counsel's trial strategy, accused him of professional misconduct, and filed a civil suit against him alleging assault. Similar facts existed in *Boyd,* but this court found no basis for relief because the defendant failed to prove that a conflict of interest actually existed and affected counsel's performance. A defendant who files a lawsuit against his attorney does not necessarily create a conflict of interest. *Boyd,* 913 S.W.2d at 844. Likewise here, Defendant failed to prove to the trial court the existence of a true conflict of interest affecting counsel's performance. In fact, the record suggests that Defendant might have attempted to create a conflict in so far as his psychological evaluation reveals that he intended to "get rid of" his second attorneys just as he had "gotten rid of" the first ones. Such a maneuver is "an improper manipulative undertaking to obstruct the orderly administration of justice." *State v. Kent,* 637 S.W.2d 119, 122 (Mo.App.1982) (citing *U.S. v. Hart,* 557 F.2d 162, 163 (8th Cir.1977)).

Additionally, as in *Kent* and *Denny,* Defendant here complained to the trial court that his counsel was incompetent and had "no concern for [his] welfare." But the record contains no justification for Defendant's dissatisfaction. On the contrary, it depicts counsel's efforts to defend his client competently and professionally in spite of Defendant's refusal to communicate or cooperate in the preparation of his own defense. The breakdown in communication was Defendant's own doing, and disagreement on trial strategy does not equate to an irreconcilable conflict creating

grounds to substitute counsel. *Boyd* at 846. We find no abuse of discretion by the trial court on this record. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., concur.