**STATE of Missouri, Respondent,**

v.

**Bill E. WILKERSON, Appellant.**

**No. WD 71314.**

Missouri Court of Appeals, Western District.

Feb. 1, 2011.

Margaret M. Johnston, Assistant Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division I: MARK D. PFEIFFER, Presiding Judge, and THOMAS H. NEWTON and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

Bill E. Wilkerson ("Wilkerson") appeals from the judgment of the Circuit Court of Moniteau County ("trial court") in which a jury found him guilty of the class D felony of endangering a corrections officer and for which he was sentenced to a term of four years. On appeal, Wilkerson argues that the trial court impermissibly proceeded to trial without first obtaining and giving due consideration to a report of mental examination both as ordered by the trial court and as contemplated by section

552.020.[1] We agree. Wilkerson's conviction and sentence below are vacated, and this case is remanded for proceedings consistent with this opinion.

## Statement of Facts

On June 9, 2007, while an inmate at the Tipton Correctional Center, Wilkerson spit on Officer Libhart as she was returning him to his cell. Wilkerson was charged with violation of section 565.085, RSMo Cum.Supp.2006. After Wilkerson appeared *pro se* and pleaded not guilty, trial was set for November 10, 2008. Prior to trial, Wilkerson made a written application for services of the Public Defender Commission and was referred to John Tomlin ("Tomlin"), Public Defender. However, though he requested court-appointed counsel, Wilkerson returned all correspondence from Tomlin unopened and refused to meet with him. At the pretrial conference and in the initial proceedings before the venire panel, Wilkerson again refused to talk to Tomlin, was nonresponsive to Judge Donald Barnes, engaged in a string of nonsense talk and profanity, and spit in Tomlin's face.

Because some of these actions took place before the venire panel, Tomlin moved for a mistrial and for a mental examination of Wilkerson. Judge Barnes granted both motions and issued a written order directing the Department of Mental Health to cause Wilkerson to be examined and to report the results of that examination. The order specifically stated that *"[t]he court finds that there is reasonable cause to believe that [Wilkerson] has a mental disease or defect excluding fitness to proceed"* and further specified that the mental health report comply with the itemized reporting requirements of section 552.020.3.

On April 2, 2009, the trial court received a letter from the mental health examiner, Dr. Byron English, stating that he had visited Wilkerson at the correctional center where Wilkerson was housed. Dr. English further explained that Wilkerson refused to meet with him and, consequently, English was unable to complete the examination necessary for him to be able to render a section 552.020 report. Thus, Dr. English stated that he would not submit a "Pretrial Certificate" to the trial court. The trial court took no further action regarding a mental examination of Wilkerson or obtaining a corresponding mental health report. Instead, the case proceeded to trial on June 18, 2009.

In pretrial conference on June 18, 2009, with Wilkerson present, the trial court recounted the events of the first attempted trial and noted that, at that time, the trial court had "determined that because of the display that the defendant put on, that it was necessary that the Court abort that trial and ordered that the defendant submit to a mental competency examination with respect to his ability to stand trial." The trial court further detailed that Dr. English had visited Wilkerson at the correctional facility but "the defendant refused to come out of his cell to meet with the psychiatrist and an examination could not be performed." Without further discussion of Wilkerson's mental health, or any objection from Tomlin, the case proceeded to trial before a jury.

During the entirety of the pretrial conference, Wilkerson continued the pattern of behavior he had engaged in at the first trial. He was non-responsive; engaged in nonsense talk; sang; and when he did address the trial court or his attorney, he did so with direct threats and abusive and crude language. At Wilkerson's request, the trial court ordered Wilkerson to be

---

1. All statutory citations are to RSMo 2000 unless otherwise indicated.

located outside of the courtroom during the trial. Wilkerson was convicted by the jury, and the trial court sentenced him to four years in prison. Wilkerson timely appeals.

## Standard of Review

Wilkerson's trial counsel did not object to the trial court proceeding with the trial without the court-ordered mental health examination and corresponding section 552.020 mental health report, nor did Wilkerson's trial counsel argue that issue in Wilkerson's motion for acquittal or for new trial. Consequently, this issue is not preserved for appeal, and the only available review is for plain error. *State v. Kinder*, 942 S.W.2d 313, 323 (Mo. banc 1996). In plain error review, we undertake a two-step process. *Riddell v. Bell*, 262 S.W.3d 301, 304 (Mo.App. W.D.2008). We first evaluate whether the trial court committed "evident, obvious and clear error that affected substantial rights." *Id.* (quoting *Cohen v. Express Fin. Servs., Inc.*, 145 S.W.3d 857, 864 (Mo.App. W.D. 2004)). We then must determine whether such "evident, obvious and clear error" created a manifest injustice or a miscarriage of justice. *Id.*

## Analysis

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* at 172, 95 S.Ct. 896.

In his sole point on appeal, Wilkerson argues that the trial court plainly erred in proceeding with the trial after Dr. English, the mental health examiner, failed to provide a mental health report as required by section 552.020. Because the reporting mandates of section 552.020.3 are mandatory and a failure to follow them affected Wilkerson's substantive due process rights, we agree.

Echoing the refrain of the United States Supreme Court in *Drope*, Missouri's statutory scheme on the competency to stand trial states: "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." § 552.020.1. This statute encapsulates the common law doctrine that " '[d]ue process requires that a defendant may not be tried unless he is competent to stand trial.' " *Bolden v. State*, 171 S.W.3d 785, 790 (Mo.App. W.D.2005) (quoting *State v. Tokar*, 918 S.W.2d 753, 762 (Mo. banc 1996)). " 'The standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.' " *Zink v. State*, 278 S.W.3d 170, 183 (Mo. banc 2009) (quoting *Tokar*, 918 S.W.2d at 762) (internal quotations omitted). "[O]nce the trial court is presented with sufficient facts to form reasonable cause to believe the accused lacks the mental fitness to proceed, whether by motion, by facts coming before it, or through its own observation, *the court is mandated to order a § 552.020 mental exam.*" *State v. Tilden*, 988 S.W.2d 568, 576 (Mo.App. W.D.1999) (emphasis added). Section 552.020.2 requires that such court-ordered mental examina-

tions "shall" be accompanied by a report of the examination, and section 552.020.3 requires that:

A report of the examination made under this section *shall* include:

(1) Detailed findings;

(2) An opinion as to whether the accused has a mental disease or defect;

(3) An opinion based upon a reasonable degree of medical or psychological certainty as to whether the accused, as a result of a mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense;

(4) A recommendation as to whether the accused should be held in custody in a suitable hospital facility for treatment pending determination, by the court, of mental fitness to proceed; and

(5) A recommendation as to whether the accused, if found by the court to be mentally fit to proceed, should be detained in such hospital facility pending further proceedings.

(Emphasis added.)

In the instant case, it is undisputed that the trial court expressly concluded in its Order for Mental Examination that there existed "[r]easonable cause to believe that [Wilkerson] has a mental disease or defect excluding fitness to proceed." More specifically, the trial court explained at the time of declaring a mistrial of Wilkerson's first trial:

Well, it appears to the Court that the defendant, by his conduct, is saying one of two things: Either that he is determined to frustrate the process and it's an intentional act by design; or he may, in fact, be suffering from some kind of a mental disease or defect here today. Accordingly, I reluctantly, because we've gotten this far, have to grant the motion for a mistrial and discharge the jury and

enter an order that the defendant be committed to the Biggs unit at state hospital at Fulton for purposes of a mental examination to determine, one, whether or not at the present time he is capable of standing trial.

In *Tilden*, we not only concluded that a mental health examination was mandatory once the trial court concluded it had reasonable cause to question the accused's competency to proceed to trial, we also concluded that such examination should be followed by a section 552.020 mental health report and only *"after* receiving a report (or reports), the [trial] court must make a decision as to whether to hold a competency hearing." 988 S.W.2d at 576 (emphasis added).

In the present case, after the trial court expressly concluded that there was reasonable cause to question Wilkerson's competency to proceed, the trial court ordered a section 552.020 mental examination and mental health report. Due to Wilkerson's intransigence, it received neither. With no further discussion of Wilkerson's mental health, it is implicit in the trial court's action that it concluded that Wilkerson was competent to stand trial, and the trial court proceeded with Wilkerson's trial. Consequently, our inquiry is to determine whether the trial court may make such a competency determination without the mental health examination and report it had ordered to be produced under the mandate of section 552.020.

As noted above, section 552.020.3 establishes requirements for a mental health report. The report of an examination made under this section *"shall* include": (1) detailed findings; (2) an opinion about whether the accused has a mental illness; (3) if so, whether that mental disease means that the accused cannot understand the proceedings or assist in their defense; (4) recommendations about the confine-

ment of the accused. § 552.020.3. The use of the word "shall" normally indicates a mandatory duty. *State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009). However, utilizing the word "shall" " 'does not inevitably render compliance mandatory, when the legislature has not prescribed a sanction for noncompliance.' " *State ex rel. State v. Parkinson*, 280 S.W.3d 70, 76 (Mo. banc 2009) (quoting *State ex rel. Fischer v. Brooks*, 150 S.W.3d 284, 285 (Mo. banc 2004)). Instead, "determining if the word 'shall' is mandatory or directory requires courts to review the context of the statute and to ascertain legislative intent." *Teer*, 275 S.W.3d at 261. The purpose of section 552.020 is to protect the constitutional due process rights of criminal defendants not to be tried while legally incompetent. *State ex rel. Baumruk v. Belt*, 964 S.W.2d 443, 445 (Mo. banc 1998); *see also Drope*, 420 U.S. at 171–73, 95 S.Ct. 896. To ensure the protection of those rights, the statute states that a trial court shall order a mental exam when the trial court has reasonable cause to believe that the accused lacks fitness and that the report shall include the information set forth in section 552.020.3. § 552.020. We find nothing in the context of the statute to indicate that the requirements of section 552.020 are discretionary. Rather, there is an obvious line of logic connecting the purpose of the statute with a *requirement* to order a mental health exam and a *requirement* for the report of that exam to include certain categories of information. *See Tilden*, 988 S.W.2d at 577 (finding that once the trial court has reasonable cause to question the mental competency of the defendant, the requirement to order a mental health exam is mandatory because "[p]ublic justice is not served by the trial and sentencing of a defendant who because of mental disease or defect lacks the capacity to understand the proceedings against him or to assist in his own defense.").

As a result, once the trial court concluded that there was reasonable cause to question whether Wilkerson was competent to stand trial, the trial court was then bound by the dictates of the statute and could not proceed to a determination of competency until a section 552.020 mental health report was provided to and considered by the trial court upon completion of the mental health examination. Because the statute mandates that this report "shall" provide the categories enumerated in section 552.020, the letter sent by Dr. English stating only that Wilkerson refused to meet with him does not constitute a mental health report as dictated by the statute. While we understand the frustration of the trial court, we can find no precedent standing for the proposition that the mandatory requirements of section 552.020.3 are rendered discretionary by a defendant's single refusal to participate in the process.

In fact, the precedent demonstrates a different standard altogether. In *State v. Johnson*, the required mental examination was conducted despite the defendant's initial refusal to cooperate. 328 S.W.3d 385, 392–93 (Mo.App. E.D.2010). In that case, the trial court ordered a detailed mental evaluation in December of 2007. *Id.* In March of the following year, the Department of Mental Health wrote a letter explaining that "[t]his evaluation has been delayed because most of the examiners who do these evaluations had been retained by the defense to evaluate Mr. Johnson, but Mr. Johnson has consistently refused to cooperate." *Id.* Johnson's refusal to cooperate persisted despite continued attempts to examine him. *Id.* Finally, in June of 2009, the evaluation of the defendant was accomplished over the course of three visits by an examiner and the final

report was sent to the court in early July, over six months after the initial order.[2] *Id.* While we believe that each effort at a section 552.020 mental health evaluation must be evaluated on a case-by-case basis and stop short of stating that repeated attempts to interview the defendant over a six-month period by the Department of Mental Health are required, the facts of *Johnson* illustrate a good example of the diligence by mental health professionals contemplated in a section 552.020 mental health evaluation, especially considering the due process issues inherent in determining if a defendant is competent to stand trial.

· Conversely, we recognize that a defendant cannot hide behind due process rights and befuddle the process of justice by combining courtroom antics with a refusal to speak with mental health professionals. This opinion does not stand for the proposition that Wilkerson's campaign of alternating obscene in-court outbursts and out-of-court stony silence can act as an escape valve from a judicial determination of his competency.[3] If Wilkerson persists in refusing to participate in the examination of his mental health, his mental competency can and should be evaluated using other sources. This eventuality seems to be contemplated by the statute, as it allows the trial court to order witnesses to speak to the examiner and for police reports to be made available to them. Furthermore, there is case precedent supporting the use of peripheral sources. In *Bolden v. State,* the defendant refused to speak with a psychologist secured by counsel to assess his mental competency. 171 S.W.3d at

790. Despite this, the psychologist was able to recommend that Bolden proceed to an inpatient evaluation by reviewing relevant records relating to Bolden's mental competency. *Id.*

In the instant case, if Wilkerson had persisted in his refusal to cooperate with the mental health examining expert, the expert could have utilized the transcript of the pretrial matters, police reports, interviews of witnesses, and any other documentation deemed relevant to the expert to form an opinion on the competency of Wilkerson. Failing to make any additional effort to complete Wilkerson's mental competency evaluation and provide the trial court a section 552.020 report prior to trial, however, does not comply with the statutory mandate of section 552.020 and results in reversible plain error.

### Conclusion

Because the due process requirements of section 552.020 are mandatory, we conclude that it was "evident, obvious and clear error" for the trial court to adjudicate Wilkerson's competency to stand trial without the benefit of mandatory input from the sort of mental health expert that section 552.020 contemplates. Further, because Wilkerson's competency to proceed to trial was not determined under the dictates of section 552.020, as a matter of law, we have no way of knowing whether Wilkerson was mentally competent to stand trial when the trial court compelled the same, and as such, it would be a manifest injustice to permit Wilkerson's June of 2009 conviction to stand without the due

---

**2.** Such delay is not without consequences for the defendant. In *Johnson,* the appellate court determined that such delay did not count toward the 180–day statutory period provided under the Uniform Mandatory Disposition of Detainers Law to bring a defendant to trial.

**3.** Like the trial court, this court finds it suspicious that Wilkerson cannot keep quiet at trial but has the opposite affliction when visited by a mental health professional.

process assurance that Wilkerson was, in fact, competent to stand trial. And, as the United States Supreme Court concluded in *Drope*, it is not an adequate assurance of Wilkerson's due process rights to simply remand the case for a mental health evaluation aimed at establishing whether Wilkerson was competent in June of 2009. *Drope*, 420 U.S. at 183, 95 S.Ct. 896. Accordingly, Wilkerson's conviction and sentence are vacated, and this cause is remanded for a section 552.020 mental health evaluation, the preparation of a mental health report in compliance with section 552.020, and a determination by the trial court as to Wilkerson's competency to stand trial. "The State is free to retry [the defendant], assuming, of course, that at the time of such trial he is competent to be tried." *Id.*

The judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.

THOMAS H. NEWTON and ALOK AHUJA, JJ., concur.