

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Nos. SD35734 and SD35752 |
| | ) | (consolidated) |
| JEFFREY SCOTT KOWALSKI, | ) | |
| | ) | **Filed:  November 5, 2019** |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Michael O. Hendrickson

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

Jeffrey Scott Kowalski ("Defendant") was convicted of one count of the class-D felony of unlawful merchandising practices (*see* section 407.020[1]) ("Count 1" or "criminal merchandising practices"), one count of the class-A misdemeanor of deceptive business practices (*see* section 570.140), one count of the class-B misdemeanor of identity theft (*see* section 570.223), and one count of the class-B misdemeanor of attempted stealing by deceit (*see* section 564.011).  Defendant's first point claims he was improperly denied the right to represent himself at trial.  Point 2 challenges the sufficiency of the evidence to support his conviction for criminal merchandising practices.

---

[1] RSMo Cum. Supp. 2008.  Unless otherwise noted, all other statutory citations are to RSMo 2016.

Finding merit only in Defendant's second point, we reverse his conviction on Count 1 and affirm the judgment in all other respects.

## The Evidence

In reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the State and give it the benefit of all reasonable inferences that might be drawn therefrom. *State v. Loewe*, 893 S.W.2d 880, 882 (Mo. App. S.D. 1995). The following recitation of the evidence relevant to Defendant's points is presented in accordance with that standard.

In 2016, Dr. Timothy Hadfield ("Dr. Hadfield"), the superintendent of a local school district, received an envelope that listed Defendant as the return addressee. Inside the envelope was an IRS form that claimed Dr. Hadfield had received $600.00 from Starprose Corporation. He interpreted the form – which required him to provide his social security number – to mean that he had not paid taxes on $600.00 worth of income from that entity. Starprose Corporation also sent Dr. Hadfield an email at his school email address that included an IRS W-9 form as an attachment. The email asked Dr. Hadfield to return the completed form to enable him to receive payments from Starprose Corporation.

Dr. Hadfield, who had not had any business dealings with either Starprose Corporation or Defendant, did not return either document. Instead, he contacted the Missouri Superintendent's Association in an attempt to figure out what was going on. That organization contacted the Missouri Attorney General's office, and Dr. Hadfield learned that other school officials and state employees had received similar letters.

A few months later, Dr. Hadfield received a notice that claimed he owed an unpaid debt in the amount of $50.00.  The letter was from GE Services, and it directed Dr. Hadfield to send the $50.00 owed to Defendant at Starprose Corporation.  Dr. Hadfield did not know Defendant, and he had no idea why Defendant was sending him a bill for $50.00.  Because the letter looked official, Dr. Hadfield asked his school's attorney to respond to GE Services.  Shortly thereafter, Dr. Hadfield received a retraction letter from GE Services that indicated Defendant had abused its collection system and that Defendant's account had been deactivated as a result of that abuse.

Defendant testified at trial in his own defense, and he admitted to sending the letters and emails to Dr. Hadfield and others as part of what he claimed was a "misguided and complicated prank, directed at people that he thought had clout in Missouri." Additional evidence will be mentioned as necessary in our analysis of Defendant's points.

**Analysis**

*Point 1 – Forfeiture of Right to Self-Representation*

Defendant's first point claims the trial court "plainly erred" in denying his repeated requests to represent himself because those requests "were timely, unequivocal, knowing, voluntary, and intelligent[.]"[2]

"The Sixth Amendment grants an accused the right to counsel, as well as the related right to waive counsel and proceed *pro se*."  **United States v. Mosley**, 607 F.3d 555, 558 (8th Cir. 2010).  "A criminal defendant who makes a timely, informed, voluntary

---

[2] As will be noted, *infra*, Defendant was allowed to represent himself for a significant period of time, but his right to do so was later revoked based upon certain obstructionist conduct Defendant had engaged in. Although Defendant requests review for plain error, our standard of review of a ruling denying a defendant's request to proceed *pro se* is for an abuse of discretion.  **State v. Johnson**, 328 S.W.3d 385, 394 (Mo. App. E.D. 2010).  In any event, Defendant's claim would fail under either standard.

and unequivocal waiver of the right to counsel may not be tried with counsel forced upon him by the State." **State v. Hampton**, 959 S.W.2d 444, 447 (Mo. banc 1997).

> However, a defendant's right of self-representation is not absolute; it can be terminated when the defendant engages in serious obstructionist misconduct. *U.S. v. Edelmann,* 458 F.3d 791, 808–809 (8th Cir.2006) (quoting *Faretta* [*v. California*, 422 U.S. 806, 834, n.46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975))]. On that determination, we review for an abuse of discretion. *Id.*

*Johnson*, 328 S.W.3d at 394. *See also* **State v. Blackmon**, 664 S.W.2d 644, 648 (Mo. App. S.D. 1984) (holding that the trial court did not abuse its discretion in requiring defendant to stand trial with assistance of counsel given the results of defendant's psychiatric report). "The government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Johnson*, 328 S.W.3d at 395 (quoting **Mosley**, 607 F.3d at 558).

Here, neither party disputes that Defendant's request to represent himself was made timely, unequivocally, knowingly, and intelligently. In September 2016, Defendant waived his right to counsel and was allowed to represent himself through August 2017. At that time, a new judge was assigned to the case ("the trial court"). After conducting a hearing, the trial court continued to allow Defendant to proceed without an attorney.

That status changed in December 2017, when the trial court revoked Defendant's bond and appointed counsel to represent him due to inappropriate pre-trial conduct Defendant engaged in while acting on his own behalf. The issue in this appeal is whether the trial court abused its discretion in ruling that Defendant had forfeited his right to represent himself due to those behaviors.

In *Johnson*, the defendant was held to have forfeited his right to self-representation by incessantly impugning his lawyers, ranting to the court, using

4

obscenities, and going on tirades that impeded the judicial proceedings and led the court to order that defendant undergo a mental evaluation. 328 S.W.3d at 396-97. In *Mosley*, the reviewing court determined that the defendant – who also had undergone a mental evaluation – was either unable or "unwilling to participate in the proceedings" due to his refusal to answer questions as well as his bizarre responses when questioned by the court. 607 F.3d at 557-59. The *Mosley* defendant "wanted to talk … about everything but [his] case." *Id.* at 559.

Here, the trial court revoked Defendant's right to represent himself after Defendant had engaged in the following conduct:

- Paying the trial judge's personal property taxes, apparently in an attempt to create a conflict of interest and cast doubt upon the legitimacy of the proceedings. At a pre-trial hearing, Defendant said to the judge, "On November 24th, you received almost $800.00. I was just wondering what you were going to do with that money?" The judge replied that he had not received any such payment, but he later got notice from the Webster County Collector's Office that Defendant, using Starprose Corporation, had paid his personal property taxes in that amount. The judge then had that payment reversed.

- Engaging in inappropriate communications with Dr. Hadfield's daughters. Defendant issued an improper subpoena to a teenage daughter that requested her tweets and call history from 2016. Copies of the subpoenas were never provided to the State, and Defendant never coherently articulated an explanation of the teenage daughter's connection to the case. Defendant also demanded that the State produce a birth certificate to prove the daughter's age. Then, in an attempt to manufacture evidence to support a purported *Brady*[3] violation, Defendant also had delivered to Dr. Hadfield's older daughter's home a package from Amazon Prime with an included note that stated, "Enjoy your gift, from [Missouri Attorney General] Josh Hawley."

- Pulling what Defendant described as various "pranks" on the trial court. Defendant filed a pleading in which he claimed to speak only Spanish and asked that a Spanish interpreter be provided for him. Defendant later admitted to the trial judge that he had filed the pleading as a "joke" and a "prank" because "I just like messing with you."

---

[3] *See* **Brady v. Maryland**, 373 U.S. 83 (1963).

- Announcing his intention to call the trial judge's wife as a witness at trial.

- Filing a pleading wherein he falsely claimed that the trial judge had a conflict of interest in the case because he had received income from Defendant's Starprose Corporation.

These inappropriate actions all occurred while Defendant was allowed to represent himself and resulted in the trial court's decision to revoke Defendant's bond, appoint counsel, and order a mental evaluation of Defendant. When the mental evaluation concluded that Defendant was competent to stand trial and did not suffer from a mental disease or defect, the trial court denied Defendant's renewed request that he again be allowed to represent himself. The trial court based that denial on the following stated reasons.

> [C]onsidering prior proceedings herein, the Court seriously questions whether [D]efendant can competently represent himself without significant challenge.
>
> . . . .
>
> The Court cannot disregard the proceedings of this case, and believes that were [you] to proceed to trial without the assistance of an attorney, um, it would be an[,] I think[,] great risk for you to effectively be able to represent yourself, considering your failures in trying to do so, before you had counsel on this case.
>
> As I indicated in one of my last entries, one last aspect of my entry from December 8th, 2017[, D]efendant was perilously close to being sanctioned either by -- after a motion and hearing, or in the -- or by the Court's own initiative.
>
> None of which occurred.
>
> . . . .
>
> Further, I might add, that since the time he [(appointed counsel)] has represented you, none of the very concerning proceedings that this court had undertaken before your

6

incarceration and representation by [appointed counsel] had occurred.

Defendant argues that his conduct differs from that which occurred in ***Johnson*** and ***Mosley*** in that, once the trial court informed him that his behavior was disruptive and constituted an attempt to manipulate the judicial process, Defendant conformed his behavior to the appropriate standards. Assuming that to be true, the trial court could still reasonably conclude that Defendant's obstructionist behavior was as extreme and disruptive as that exhibited by the defendants in ***Johnson*** and ***Mosley***, and "there was good cause to believe that Defendant would continue to disrupt the trial" if he were again allowed to proceed without counsel. *See **Johnson***, 328 S.W.3d at 397.

Finding no abuse of discretion, Point 1 is denied.

*Point 2 – Insufficiency of the Evidence on Count 1*

Point 2 claims the trial court erred in entering judgment and sentence against Defendant for criminal merchandising practices in that the evidence adduced at his trial was insufficient to prove that his misrepresentation that Dr. Hadfield owed a $50 debt was made "in connection with [the] sale of merchandise in trade or commerce" as required by the Missouri Merchandising Practices Act ("MMPA").

> In general, we review challenges to the sufficiency of the evidence supporting a criminal conviction for whether the State introduced sufficient evidence at trial from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime. *State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011). We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences. *Id.* In our review, we do not act as a "super juror" with veto powers and will not reweigh the evidence on appeal; rather, we give great deference to the trier of fact, who may believe all, some, or none of the testimony of a witness. *State v. Davidson*, 521 S.W.3d 637, 643 (Mo. App. W.D. 2017).

7

*State v. Young*, No. ED 106574, 2019 WL 2504783, at *7 (Mo. App. E.D. June 18, 2019).

Section 407.020.1[4] of the MMPA provides, in relevant part, as follows:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

Section 407.010 provides the following relevant definitions:

(4) **"Merchandise"**, any objects, wares, goods, commodities, intangibles, real estate or services;

    . . . .

(6) **"Sale"**, any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit;

(7) **"Trade"** or **"commerce"**, the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms "trade" and "commerce" include any trade or commerce directly or indirectly affecting the people of this state.

Count 1 charged the alleged criminal merchandising practice committed by Defendant as follows:

[D]efendant, in violation of Section 407.020.1 and 407.020.3, RSMo, committed the class D felony of [criminal merchandising practices], . . . in that on or about March 3, 2016, in the County of Camden, State of Missouri, [D]efendant, in connection with the sale of merchandise in trade and commerce, willfully, knowingly, and with the intent to defraud:

    A. Misrepresented to [Dr.] Hadfield that [Dr.] Hadfield owed $50 for an unpaid debt to [D]efendant;

---

[4] RSMo Cum. Supp. 2008.

B. Used deception to create [Dr.] Hadfield's false impression that [Dr.] Hadfield owed [D]efendant $50 for an unpaid debt;

C. Omitted, concealed, and suppressed to [Dr.] Hadfield the material fact that [D]efendant had not provided goods and services to [Dr.] Hadfield[; and]

D. Engaged in an unfair practice by billing, charging or attempting to collect payment from [Dr.] Hadfield, for merchandise which [Dr.] Hadfield had not ordered or solicited.

Defendant convincingly argues that the evidence at trial was insufficient to support his conviction on Count 1 as the State produced no evidence that Defendant actually sold or leased, or attempted to sell or lease, any merchandise to Dr. Hadfield. Defendant claims that "in order for debt collection to be considered 'in connection' with the sale of merchandise in trade or commerce, there must be some original sale or transaction for merchandise on which the debt in question is being collected." Thus, if no such evidence was adduced, while Defendant might be guilty of fraud, he cannot be convicted of criminal merchandising practices. We agree.

In addressing the meaning of "in connection with" for purposes of section 407.020.1 in *Jackson v. Barton*, 548 S.W.3d 263, 270 (Mo. banc 2018), our high court noted that "the MMPA 'prohibits the use of the enumerated deceptive practices if there is a relationship between the sale of merchandise and the alleged unlawful action.'" *Id.* (citing *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. banc 2014)). The unlawful action can occur at any time before, during, or after the sale, and by any person. *Conway*, 438 S.W.3d at 414.

In *Jackson*, the actions of a debt collector were made "in connection with" the sale of dental services for MMPA purposes. 548 S.W.3d at 272. In that case, LifeSmile sold dental services to the plaintiff. LifeSmile later hired a debt collector to collect the

9

amount that allegedly remained outstanding. Thus, the debt collector's actions were undertaken on behalf of LifeSmile to collect payment for the dental services rendered and therefore fell within the statute's ambit. *Id.* at 271.

Here, unlike what occurred in *Jackson*, no evidence of a sale or attempted sale of goods or merchandise in trade or commerce was presented. Thus no relationship between the alleged unlawful action – the misrepresentation of a $50 debt – and the sale of merchandise was shown. In fact, the State's own charging document affirmatively reveals that absence by alleging that Defendant "concealed . . . the material fact that [he] had *not* provided goods and services to [Dr.] Hadfield." (Emphasis added.)

We also find *Watson v. Wells Fargo Home Mtg., Inc.*, 438 S.W.3d 404, 406 (Mo. banc 2014), instructive on the "in connection with" issue presented in the instant case. *Watson* held that loan modification negotiations were not made "in connection with" the sale of a loan because Wells Fargo was not enforcing the terms of the original loan when it negotiated the loan modification, and the loan modification was not a service that the lender agreed to sell or the borrower agreed to buy when the parties entered into the loan. *Id.* at 406, 408. *Watson* contrasted its facts with those in *Conway*, where the plaintiffs alleged that the defendants had wrongfully foreclosed on the deed of trust that the plaintiffs executed when they purchased their property. *Watson*, 438 S.W.3d at 407 (citing *Conway*, 438 S.W.3d at 413). *Conway* concluded that the allegedly unlawful act *was* "in connection with" the sale because "when the operative transaction is the procurement of a loan, the 'sale' is not complete when the lender extends the credit, but continues throughout the time the borrower is making payments on the loan." 438 S.W.3d at 407-08.

10

The State argues that Defendant "fraudulently created the *impression* that he had provided goods or services to Dr. Hadfield, for which Dr. Hadfield owed him money" (emphasis added) and that such a misrepresentation falls within the MMPA's prohibitions. In support of that claim, the State cites ***Ports Petroleum Co. of Ohio v. Nixon***, 37 S.W.3d 237 (Mo. banc 2001), for the proposition that the term "unfair practice" is "unrestricted, all-encompassing and exceedingly broad[, and] cover[s] every practice imaginable and every unfairness to whatever degree." ***Id.*** at 240. That case is of no help to the State because it addressed whether the sale of motor fuel below its cost with the intent to injure competition constituted an "unfair practice" under the MMPA. ***Id.*** Whether Defendant engaged in an unfair practice is not at issue here as Defendant admits it.

The State also argues that the MMPA defines "merchandise" to include "services," and because Defendant used GE Services to carry out his attempt to defraud Dr. Hadfield, Defendant's actions were in connection with the sale of merchandise, "that merchandise being the service provided by GE Services of notifying Dr. Hadfield of the purported debt and directing him to make payment to [Defendant.]" We fail to see how the role of the collection agency satisfies the requirement of "a relationship between the sale of merchandise [or services] and the alleged unlawful action[,]" ***Jackson***, 548 S.W.3d at 270 (citing ***Conway***, 438 S.W.3d at 414), as Defendant did not sell any merchandise or services to GE Services, and GE Services was not charged with any wrongdoing. In fact, GE sent out retraction letters and shut down Defendant's account when it decided that his collection attempts were illegitimate.

As noted in *Conway*, all MMPA cases must allege a relationship between the sale of merchandise and the allegedly unlawful conduct. *Id.* at 415. Here, no such evidence was presented. Point 2 is granted, and Defendant's conviction on Count 1 is reversed.

Because the reversal is premised solely upon the insufficiency of the evidence to support a conviction, no remand for a new trial on Count 1 is permitted. *See State v. Drabek*, 551 S.W.3d 550, 561 (Mo. App. E.D. 2018) (holding that a second trial in such a circumstance is prohibited by the double-jeopardy clause of the United States Constitution). We therefore remand solely to direct the trial court to enter a judgment of acquittal on Count 1. All other portions of the judgment are affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS