277 P.3d 251

STATE of Hawai'i, Respondent/Plaintiff–Appellee,

v.

Michael C. TIERNEY, Petitioner/Defendant–Appellant.

No. SCWC–29939.

Supreme Court of Hawai'i.

May 7, 2012.

Jack Schweigert, for petitioner/defendant-appellant.

Brian Vincent, Deputy Prosecuting Attorney, for respondent/plaintiff-appellee.

ACOBA, DUFFY, and McKENNA, JJ.; with NAKAYAMA, J., dissenting, with whom RECKTENWALD, C.J., joins.

Opinion of the Court by ACOBA, J.

We hold that when a court orders an examination to determine whether a defendant is fit to proceed to trial pursuant to Hawai'i Revised Statutes (HRS) § 704–404(1), and the defendant refuses to cooperate with the examiner, the examiner must produce a report of the examination that expressly states whether "such unwillingness of the defendant was the result of physical or mental disease, disorder, or defect," if possible. HRS § 704–404(5). If it is not possible for the examiner to make that determination, the examiner must expressly state in the report that it is not possible to determine whether the defendant's unwillingness is the result of physical or mental disease, disorder, or defect. Because the examiner in this case did not state in his report whether Petitioner/Defendant–Appellant Michael C. Tierney

(Petitioner) was fit to proceed or state that it was impossible to make that determination, we hold that the District Court of the First Circuit (the court)[1] abused its discretion in proceeding to trial without the examiner's opinion. We therefore vacate the September 9, 2011 judgment of the ICA filed pursuant to its August 25, 2011 Summary Disposition Order[2] (SDO) affirming the November 18, 2008 Notice of Entry of Judgment and/or Order filed by the court[3] convicting Petitioner of promoting a detrimental drug in the third degree, HRS § 712–1249 (1993)[4], and we remand to the court for further proceedings consistent with this opinion.

## I.

On April 28, 2008, Petitioner was observed by Honolulu Police Officer Bronson Leana sitting on a bench in downtown Honolulu smoking a marijuana cigarette. When Officer Leana asked Petitioner if he had any weapons, Petitioner responded, "no," and proceeded to pull out a small bag of marijuana from one of his socks. Officer Leana seized the marijuana and arrested Petitioner.

On May 19, 2008, Petitioner made his first appearance in court[5]. Respondent/Plaintiff–Appellee State of Hawaiʻi (Respondent) charged Petitioner with promoting a detrimental drug in the third degree. The court entered a not guilty plea on Petitioner's behalf and referred him to the Office of the Public Defender. Petitioner informed the court that he wanted to waive counsel and represent himself. The court denied Petitioner's request, stating, "Based on your replies to the court, the court feels that you

would be inadequate to represent yourself." The following was said during Petitioner's appearance:

[PETITIONER]: Well, one thing is Your Honor, you got drug court in Hawaiʻi. I'd like to get a program, rehab. I'm trying to get—

THE COURT: Okay. This is District Court.

[PETITIONER]:—treatment and recovery

. . .

[PETITIONER]: I'm citing federal law, the Georgetown Law School.

THE COURT: From Georgetown Law School. Do you have a—

[PETITIONER]: The Georgetown Law Journal. All states must implement the SRA to the Resentencing Reform Act.

. . .

[THE COURT]: But what I am doing is I'm entering a not guilty plea, refer you to the Public Defender's Office.

[PETITIONER]: No. I waive counsel. I do not want an attorney.

[THE COURT]: Based on your replies to the court, the court feels that you would be inadequate to represent yourself.

On June 20, 2008, Petitioner appeared before the court[6] and was present with Deputy Public Defender Melissa Lam as counsel. Petitioner informed the court that he wanted to represent himself. The court told Petitioner that he had "counsel ready, willing, and able to represent [him,]" but Petitioner still wanted to continue pro se, saying, "I was in judge (inaudible) courtroom for felonies June 16, and a public defender threatened to

---

1. The Honorable Lono J. Lee (Judge Lee) presided over the August 19, 2008 competency hearing, at which time the court found Petitioner fit to proceed and entered an Order Resuming Proceedings After Fitness Examination Under Chapter 704.

2. The SDO was filed by Presiding Judge Katherine G. Leonard and Associate Judges Lawrence M. Reifurth and Lisa M. Ginoza.

3. The Honorable Russell Nagata (Judge Nagata) presided over the trial and sentencing.

4. **HRS § 712–1249 Promoting a detrimental drug in the third degree**

(1) A person commits the offense of promoting a detrimental drug in the third degree *if the person knowingly possesses any marijuana* or any schedule v. substance *in any amount.*

(2) Promoting a detrimental drug in the third degree is a petty misdemeanor.

(Emphases added.)

Punishment for a petty misdemeanor is "a fine not exceeding. $1,000" and/or "imprisonment for a definite term to be fixed by the court and not to exceed … thirty days" for each offense. HRS §§ 706–640(e) and 706–663 (1972).

5. Judge Lee presided.

6. The Honorable Judge Paula Devens presided.

kill me." Petitioner asked for discovery and for a speedy trial. The court ruled, "The court is of the opinion that fitness may be an issue in this matter. The court is going to order a one [person] panel [to examine Petitioner]." Petitioner responded, "You cannot force counsel upon me, Your Honor. I will represent myself under Feretta [sic] versus California. I have the right under the Sixth Amendment."

The proceedings were suspended for one month. The court's June 20, 2008 Order Suspending Proceedings for Examination of [Petitioner] Under HRS Chapter 704 was couched in terms of the statute and stated, in part, that an opinion must be rendered as to Petitioner's fitness to proceed and his capacity for criminal responsibility at the time of the incident:

> Contents of Report, HRS §§ 704–404(4),(5),(6),(7), 704–405, 704–406:
>
> The examiner(s) report shall include the following:
>
> . . .
>
> 3. *An opinion as to [Petitioner]'s fitness to proceed,* i.e., [Petitioner]'s capacity to understand the proceedings against [Petitioner] and to assist in [Petitioner]'s own defense. . . .
>
> 4. *An opinion as to the extent, if any, to which the cognitive and/or volitional capacity of [Petitioner]*; i.e. the capacity to appreciate the wrongfulness of his conduct and/or to conform his conduct to the requirements of the law, *was impaired at the time of the conduct alleged. . . .*
>
> 5. An opinion as to the capacity of [Petitioner] to have a particular state of mind which [is] required to established [sic][an] element of the offense charged. . . .
>
> 7. *If the examination cannot be conducted by reasons of the unwillingness of [Petitioner] to participate therein, the report shall so state and shall include, if possible, an opinion as to whether [Petitioner]'s*

*unwillingness was the result of physical or mental disease, disorder or defect.*

(Emphases added.)

Olaf Gitter, Ph.D. (examiner), was appointed to prepare the report. Examiner was unable to conduct a personal examination of Petitioner because Petitioner refused to participate, invoking the fifth amendment.[7] The July 11, 2009 report of examiner stated:

> "After I had introduced myself to [Petitioner] as a psychologist ordered by the court to perform a fitness to proceed and penal responsibility evaluation, the [Petitioner] informed me that 'he would like to invoke his [f]ifth [a]mendment rights and not participate in the evaluation.' He then left the interview room."

Examiner's clinical observations stated, in part, that he could not determine Petitioner's fitness to proceed or his criminal responsibility:

> "Since [Petitioner] refused to participate in the court ordered examination, I am unable to advise the court of my own independently derived psychiatric diagnoses *nor am I able to answer the questions regarding [Petitioner]'s fitness to proceed, criminal responsibility and state of mind at the time of the alleged offenses.*"

(Emphasis added.)

On July 18, 2008, Petitioner appeared without counsel at a fitness hearing before the court. The court[8] noted that the one-panel evaluation had not been completed and further suspended the proceedings to complete Petitioner's fitness assessment. The court declared its "serious concerns" about Petitioner's mental condition, stating:

> "[T]he 704 evaluation [Petitioner] earlier refused *needs to be completed. The Court has serious concerns about this [Petitioner]'s mental health and has issues regarding this,* so therefore the Court's going to refer you for the in-patient evaluation. It

---

7. In pertinent part, the Fifth Amendment to the U.S. Constitution states that, "No person shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.

8. Judge Lee presided.

will be at O–Triple–C. The court will ask the state to draft the order."

(Emphasis added.)

Pursuant to the July 18, 2008 Order of Continued Suspension of Proceedings for Examination of [Petitioner] Under HRS Chapter 704, examiner submitted another report of his "attempt to reexamine [Petitioner]." As stated in his August 4, 2008 report, examiner conducted a two minute conversation with Petitioner:

*Forensic Database*

The examination consisted of a 2–minute face-to-face conversation with [Petitioner] at the Oahu Community Correctional Center on August 4, 2008, and a review of (1) his correctional medical record and (2) my own previous one-panel mental examination under the same case numbers submitted to [the court], on July 11, 2008.

*Due to the fact that [Petitioner] refused, once again, to participate in the court ordered evaluation, no psychological testing was done.*

*Structure of Interview*

[Petitioner] recognized me from my contact with him at OCCC on July 11, 2008. As soon as I explained to him the reason for my visit, i.e. that I was supposed to evaluate him for a fitness to proceed with his trial and penal responsibility, *he informed me that, 'He would like to invoke his Fifth Amendment rights and not participate in the evaluation.' He then left the interview room.*

I note that [Petitioner] has also refused to talk to the probation officer assigned to this case as well as to the Department of Public Safety's social worker. In both cases, he also invoked his Fifth Amendment rights.

. . .

*Clinical Observations*

Since [Petitioner] refused to participate in the court ordered examination, I am unable to advise the court of my own independently derived psychiatric diagnoses nor am I able to answer the questions regarding [Petitioner]'s fitness to proceed, criminal responsibility and state of mind at the time of the alleged offenses. *It is of note, however, that [Petitioner] is housed in Annex II with the general population, that he has no psychiatric contacts at OCCC and that according to an adult correctional officer whom I checked with, he is not any management problem in Annex II.*

(Emphases added.)

In his clinical observations, examiner noted a second time that he could not render an opinion as to Petitioner's fitness to proceed or his criminal responsibility:

Since [Petitioner] refused to participate in the court ordered examination, I am unable to advise the court of my own independently derived psychiatric diagnoses nor am I able to answer the questions regarding [Petitioner]'s fitness to proceed, criminal responsibility and state of mind at the time of the alleged instant offense.

The record does not reflect that Petitioner, at that time pro se, was ever informed that statements given during the examination, including admissions of guilt, are not admissible in any proceeding except on the issue of a person's physical or mental condition.[9]

## II.

On August 19, 2008, Petitioner was present at his second fitness hearing with Deputy Public Defender Robert Olson (Olson) as counsel. At the hearing, Olson stated for the record that Petitioner did not want the public defender's assistance as standby counsel or otherwise. Petitioner then reiterated that he wanted to represent himself. The court[10]

---

9. As stated in oral argument by Petitioner, HRS § 704–416 (1993) provides:

A statement made by a person subjected to examination or treatment pursuant to this chapter for the purposes of such examination or treatment shall not be admissible in evidence against the person in any penal proceeding on any issue other than that of the person's

physical or mental condition, but it shall be admissible upon that issue, whether or not it would otherwise be deemed a privileged communication, unless such statement constitutes an admission of guilt of the offense charged.

10. Judge Lee presided.

informed Petitioner that it must determine through an in-court colloquy that Petitioner was knowingly, voluntarily, and intelligently waiving his right to counsel. Petitioner stated that he understood the charge, the maximum punishment, his right to have Respondent prove the case against him beyond a reasonable doubt by taking it to trial, his right to testify or to remain silent, and his right to representation by an attorney. In relevant part, the following transpired:

MR. OLSON: Deputy Public Defender Robert Olson, Your Honor, present along with Mr. Tierney who is present.

For the—okay. For the record, Your Honor, I've attempted to speak with Mr. Tierney concerning his case. *He has refused to cooperate and communicate with me. He doesn't want the public defender's assistance in any form be it standby counsel or otherwise. So I'm just stating that for the record.*

THE COURT: Okay. Is that correct, Mr. Tierney?

[PETITIONER]: Yes. I'd like to represent myself under (inaudible) versus California.

. . .

THE COURT: I have no—I have no problem granting you that, but you have to do so knowing, voluntary, and intelligently. Okay? SO let's—let's try this.

I understand what you've told the public defender. And Mr. Olson is an excellent attorney. And based on what you've told me, I'm just going to grant his wish that he not represent you. But let's go through this colloquy. Okay?

[PETITIONER]: Okay.

THE COURT: All right. Okay. *You've been charged with the offense of Promoting a Detrimental Drug in the Third Degree, two counts,* on April 28, 2008. And both are petty misdemeanors. Maximum punishment could be 30 days jail and/or a thousand dollar fine for each. Okay? You understand that?

[PETITIONER]: *Uh, no, I don't. I filed a motion for consolidation. I feel—*

(Confers with Olson.)

[PETITIONER]: *Uh, no, I don't understand what that means. I thought it was possession. I mean, you know, I thought it was possession. That's what they told me.*

THE COURT: Okay. Mr. Tierney, um—

[PETITIONER]: *I don't sell drugs.*

THE COURT: Mr. Olson, you got to make a choice. Now either you're not going to represent or advise or stand by or you're going to stand by as counsel.

MR. McMaster [sic]: Okay. I'll sit down, Your Honor.

[PETITIONER]: Okay

THE COURT: *And if you don't understand what the charges are, how do you expect to represent yourself?*

[PETITIONER]: Yes, sir.

THE COURT: *Okay. Possession is included, if you read the statute, in the promoting detrimental drug in the third degree.*

[PETITIONER]: *Well, I haven't been given discovery, so it's hard to really do any type of reading. This is the first time I've been able to see it.*

THE COURT: *Okay. Mr. Tierney, do you want to go through this or you want to argue with the court?*

[PETITIONER]: *I want to go through this. I want to be able to represent myself.*

THE COURT: Okay. Then you have to listen and answer the questions. Okay? This is what you're being charged with. Do you understand that?

[PETITIONER]: Uh, yes, sir.

THE COURT: Okay. Do you understand the maximum penalties that I just informed you?

[PETITIONER]: Uh, yes, sir.

THE COURT: Do you understand—

. . .

THE COURT:—you have the right to have the State prove these cases against you beyond a reasonable doubt by taking it to trial?

[PETITIONER]: Yes, sir.

THE COURT: Okay. Do you understand that . . . you have the right to testify or remain silent. . . . That is your Fifth

Amendment right against self-incrimination. Do you understand that?

[PETITIONER]: Yes, sir.

THE COURT: Because these offenses have 30 days jail each, you are entitled to an attorney. Do you want to be represented by an attorney?

[PETITIONER]: Uh, no, sir.

(Emphases added.)

Subsequently, in answer to questions, Petitioner responded that his mind was clear, he was not under the influence of any drugs or alcohol, he had a high school diploma and a college degree, no one was forcing him to give up his right to an attorney, and that he was making this decision on his own. The court found Petitioner knowingly, voluntarily, and intelligently waived his right to counsel.

THE COURT: Okay. Is your mind clear this morning?

[PETITIONER]: Yes, sir.

THE COURT: Are you under the influence of any drug or alcohol that may affect your thinking?

[PETITIONER]: Uh, no, sir.

THE COURT: Okay. How much education do you have?

[PETITIONER]: I went to, uh, high school, college—I mean a high school diploma and a college degree.

THE COURT: Okay. Is anyone forcing to you give up your right to an attorney?

[PETITIONER]: No, sir.

THE COURT: You're making this as your own decision?

[PETITIONER]: Yes, sir.

THE COURT: Okay. The court will find [Petitioner] is knowingly, voluntarily, and intelligently waiving his right to counsel.[11]

Thereafter, the court impliedly determined Petitioner was fit to proceed, inasmuch as it concluded that the proceedings would continue.

THE COURT: Well, I tell you what, Mr. Tierney, for these two offenses, *because of the way you have behaved in the court on previous occasions, this court has referred you for a psychological evaluation. In both attempts you have refused.* This morning is the first time the court has been able to have an actual—a colloquy discussion with you.

[PETITIONER]: Well, I think I'm getting' better.

THE COURT: Well, what have you been doing that—that you're getting better? Are you taking medication?

[PETITIONER]: No, I don't take medication.

THE COURT: Okay. What—what have you been doing?

[PETITIONER]: Detoxing.

THE COURT: Okay. *Because you've been in custody for—at least since May. These offenses maximum penalty of 30 days in jail if you were found guilty. The most you could spend would be 60 days* in jail. You understand that?

[PETITIONER]: Yes, sir.

. . .

THE COURT: *[T]he court's going to ask the State to do the order resuming the proceedings. Um, you might want to have Mr. Tierney sign off on that before he leaves.*

THE CLERK: You need him to sign something? Okay. Hold on, Mr. Tierney. There's a document you have to sign.

[DEPUTY PROSECUTING ATTORNEY]: To clarify, Your Honor, is this DC–6?

THE COURT: Oh, um—

[DEPUTY PROSECUTING ATTORNEY]: Um—

THE COURT: DC–6, order resuming proceedings? Um—

THE CLERK: *Order resuming proceedings after fitness examination under Chapter 704.*

THE COURT: *Okay. Yes.*

---

**11.** Although raised on appeal, Petitioner does not argue his competency to waive the right to counsel in his Application.

THE CLERK: Mr. Tierney. Thank you. (Emphases added.)

On September 25, 2008, Respondent confirmed that the court had found Petitioner fit to proceed:

DEPUTY PROSECUTING ATTORNEY: Your Honor, at the outset the State would like to clarify a few things. At the August 19, 2008 date we resumed proceedings, *there was no formal findings of fitness.* Just to clarify for the record, in light of the fact that we resumed proceedings,—*the court made a finding that [Petitioner] is fit to proceed?"*

THE COURT: *Yes.*

(Emphases added).

As of August 19, 2008, Petitioner represented himself. Trial began on October 30, 2008 before the court[12]. On the first day of trial, Petitioner appeared to believe the evidence against him had been excluded. During the testimony of Officer Leana, who was Respondent's first witness, Petitioner objected to the admission of the marijuana cigarette into evidence because "[t]hat's already been dismissed with prejudice." The court asked for clarification. Respondent then explained that originally there were two charges, but one had been dropped because it was duplicative. The court overruled Petitioner's objection.

Petitioner also appeared not to understand that the nature of the charged offense was marijuana possession. When it was Petitioner's turn to cross-examine Officer Leana, Petitioner insisted that he had not "promoted" any drugs.

[PETITIONER]: Um, on the, um—the—uh, was defendant in any way trying to promote any detrimental drugs?

[DEPUTY PROSECUTING ATTORNEY]: Uh, objection. Vague and ambiguous as to the term "promote."

THE COURT: Nah, that's a legal conclusion. So I'm not going to—I'm going to sustain the objection.

[PETITIONER]: He was not promoting in any way? He was just sitting there smokin'?

[DEPUTY PROSECUTING ATTORNEY]: Objection again as to the use of the term "promoting" as vague and ambiguous.

THE COURT: And the question you had about promoting I'm going to sustain the objection. But the second part of your question I'm going to allow it, about smoking—

Respondent attempted to call another witness, and Petitioner asked for a recess. When the parties returned, Respondent requested a continuance of the trial because its witness was not present. At that point, Petitioner asked for medical attention regarding a rash.[13]

On November 18, 2008, Respondent resumed its case-in-chief. Petitioner again continued to object on the ground that "the one evidence has been dismissed by the

---

12. Judge Nagata presided.

13. The following exchange took place:
[PETITIONER]: I wanted to bring an issue up to you that I have a medical problem.
THE COURT: Oh, yeah. So—
[PETITIONER]: I have a rash all over my body.
THE COURT: Uh, no, you don't have to show me, so.
[PETITIONER]: It's right here—
THE COURT: Well, so—
[PETITIONER]:—that they're not doing anything there. I brought it up to them. I was wondering if I could get to a hospital to get—
THE COURT: Well—
[PETITIONER]:—the rash taken care of.
. . .
[PETITIONER]: But it's all over. It's open sores, Your Honor. That's all I'm asking for. Can you get me to a hospital.

THE COURT: Well, I can't. I can't, I just—
. . .
[PETITIONER]: I'm just asking for help, Your Honor. It would be interfering with reporting an emergency. It is a petty misdemeanor, Your Honor. Judicial (inaudible). I need medical treatment immediately. This is—
THE COURT: Okay.
[PETITIONER]:—driving me into extreme discomfort and extreme pain. I've been to sick call seven times in 0–Triple–C. They have failed to give me nothing.
THE COURT: Well, Mr. Tierney, when the bailiff takes you back, he'll tell them of your condition also.
[PETITIONER]: Okay. Thank you very much, Your Honor.

court." The court then asked which "one." Petitioner responded, "You know, the only evidence that you could admit would be the Case No. 08158229. The other Case 081582230 has been dismissed by [Respondent]. It would be inadmissible evidence."

Respondent then again explained to the court:

[T]his is an issue that was previously addressed. However, in response [Respondent] will note that I believe that the two charges were erroneously duplicated to reflect two charges for this incident. However, [Respondent] is not submitting that there was any particular evidence tied to any particular police report but does just note that as there were two, [Respondent] dismissed one in the interest of efficiency and to reflect basically the charging.

(Emphasis added.)

The court denied the request "because the evidence presented is one based on the case at trial today." Nevertheless, Petitioner still insisted, "That would be my objection, that it's inadmissible evidence. It shouldn't be in evidence anymore. It should be destroyed." The court stated, "Well, since this was dealt with before ... and [Respondent] made the explanation in support of—in opposition to your motion, and based on that I'm still gonna deny your motion."

Subsequently, Respondent rested. The court asked Petitioner whether he wanted to present his case. Petitioner said he did not. Petitioner also did not want to testify.

Respondent then made its closing argument. When it was Petitioner's turn to make a closing argument, he asked the court to dismiss the case because he was not charged with possession but with "promotion":

[PETITIONER]: *Yeah, but they're charging me with promotion of a detrimental drug. Is there a difference? Because when I was first arrested, I was charged with possessing. I'm just saying I'm not promoting drugs.*

And when I came in to see [the court] May 19th, I asked for help and told him I had a drug problem and to take me into custody and off the streets. Drugs are not good. I'm not promoting drugs of any

sort. I'm not a drug dealer. They charged me under the wrong statute. It should be possessing marijuana, not promoting detrimental drugs.

*The charges must be dismissed with prejudice. I'm not promoting them. I never said—you know what I mean? I was not in possession. I'm just saying I'm not promoting the drug. They charged me under the wrong statute.* (Emphasis added.)

The court explained again to Petitioner that "promoting" included "possession" of marijuana, although, as noted before, the court had already explained this on August 19, 2008, when it ruled that Petitioner knowingly, voluntarily, and intelligently waived his right to counsel. After explaining that "promotion" included "possession," the court proceeded to sentence Petitioner, although he stated that he "didn't know that[.]"

THE COURT: That's the title of the charge, but really the real elements of the charge is to knowingly possess marijuana, not promote it.

[PETITIONER]: So there is no possession in Hawai'i of marijuana?

THE COURT: There's no—there's not a title called "possession." It's called "promoting."

[PETITIONER]: So if you get caught with marijuana, it's promoting?

THE COURT: It's called—yeah. Even though you're possessing it, it's called "promoting."

[PETITIONER]: *Okay. I didn't know that, Your Honor. I couldn't find any statutes really on the subject.*

THE COURT: Okay. So as to sentencing, [Respondent] first....

(Emphasis added.)

Petitioner was found guilty of the charge and sentenced to five days in jail with credit for time served, concurrent with any other sentence Petitioner may have been serving. Petitioner's Notice of Appeal was filed on November 24, 2008.

## III.

On appeal, Petitioner was represented by counsel. On August 25, 2008, the ICA affirmed the court's judgment. The ICA held that the court "did not abuse its discretion when it determined that [Petitioner] was fit to proceed with trial." *State v. Tierney*, No. 29939, 125 Hawai'i 248, 2011 WL 3795271, at *1–2 (Haw.App. Aug. 25, 2011) (SDO). In doing so, the ICA relied on the following factors: Petitioner had an extended colloquy with the court at the August 19, 2008 hearing, in which Petitioner affirmed that he understood the charges against him, the maximum penalties associated with being found guilty, Respondent's burden of proof, that he had the right to remain silent at trial and that the court could not infer guilt from his silence, and that he had a right to an attorney; his mind was clear; he was not under the influence of drugs; and he was making his decisions voluntarily. *Id.*

The ICA also cited examiner's observations that Petitioner was being housed with the general prison population, that he had no psychiatric contacts in prison, and that according to an adult correctional officer with whom the psychologist communicated, Petitioner was not a management problem.[14]

Further, the ICA apparently extracted from the record other factors that were not mentioned in the court's colloquy with Petitioner or listed in the psychologist's report, such as Petitioner's age and experience with the judicial system and the relative lack of complexity associated with the case and the charge. However, there is nothing to indicate which of the factors in this third group were in the record or were considered by the court in exercising its discretion.

## IV.

Petitioner lists the following question in his Application:

Whether the ICA committed grave error of law when it affirmed the district court's finding Petitioner *fit to proceed without a psychological opinion as to whether it was possible/impossible to render an opinion whether Petitioner's assertion of 5th Amendment rights when examined by a court ordered psychologist was the result of a physical or mental health disease, disorder or defect, and if possible what that opinion is.*

(Emphases added).

It should be noted that the court orders for examination requested a report on fitness *and* on penal responsibility [15] at the time of the act charged. Petitioner mentions penal responsibility in the conclusion in both his Application and his opening brief. In the conclusion to his Application, Petitioner states that this court should vacate the court's November 18, 2008 conviction and remand this case to the court for "[re]determination of Petitioner's fitness and penal responsibility." Inasmuch as the examination did not proceed past the fitness phase to an examination on penal responsibility, Petitioner argued the fitness to proceed issue in his Application. Correspondingly, the ICA determined the question of fitness to proceed. *Tierney*, 2011 WL 3795271, at *1–2 ("[Peti-

---

14. The court did not mention the factors from the report listed by the ICA. Although the court referred to examiner's reports twice during the August 19, 2008 hearing, the court did not make any reference to the contents of the report. The court's first reference to the reports was in response to Petitioner's claim that he wanted to represent himself. The court stated, "Okay. [Petitioner], I think we've been through this before. And I've read the evaluation letters when you were referred for an evaluation. We need to get through the colloquy regarding you representing yourself." The court's other reference to the reports occurred when Petitioner asked the court to order the jail to give him more envelopes and a paper and pen. The court said, "Well, I tell you what, [Petitioner], for these two offenses, because of the way you've behaved in the court

on previous occasions, this court had referred you for a psychological evaluation. In both attempts you have refused. This morning is the first time the court has been able to have an actual—a colloquy discussion with you."

15. HRS § 704–402(4) (1993) provides in relevant part:

The report of the examination shall include the following:
(d) An opinion as to the extent, if any, to which the capacity of the defendant to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of law was impaired at the time of the conduct alleged.

tioner] contends that the district court erred in (1) finding him fit to proceed to trial....").

Respondent did not file a Response to the Application.

### V.

### A.

In his Application, Petitioner refers to the statutory provisions that follow. HRS § 704–405 (1993) states in part:

> [W]hen [Petitioner]'s fitness to proceed is drawn in question, the issue shall be determined by the court. If neither the prosecuting attorney nor counsel for [Petitioner] contests the finding of the report filed pursuant to section 704–404, the court may make the determination on the basis of such report. If the finding is contested, the court shall hold a hearing on the issue. When the report is received in evidence upon such hearing, the party who contests the finding there of shall have the right to summon and to cross-examine the persons who joined in the report or assisted in the examination and to offer evidence upon the issue.

Further, HRS § 704–404(5) directs:

> "If the examination cannot be conducted by reason of the unwillingness of the defendant to participate therein, the report shall so state and shall include if possible, an opinion as to whether such willingness of the defendant was the result of physical or mental disease, disorder or defect."

### B.

Petitioner maintains that "there was no medical opinion provided on whether it was possible Petitioner's refusal to be examined was the result of a mental or physical disease, disorder or defect." He contends (1) HRS § 704–405 calls for a medical opinion as to whether it is possible or impossible to opine in the examiner's report whether an unwilling defendant taking the fifth amendment is doing so as a consequence of physical

or mental disorder, disease, or defect; (2) this issue requires special knowledge and a technical background in psychology; (3) a mistake will cause the loss of freedom of a mentally disabled citizen which is a due process violation, citing *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *State v. Castro,* 93 Hawai'i 454, 5 P.3d 444 (2000); and (4) where special knowledge and a technical background are needed medical testimony is considered mandatory, citing *Craft v. Peebles, M.D.,* 78 Hawai'i 287, 298, 893 P.2d 138, 149 (1995) (holding that the plaintiff in a medical malpractice action carries the burden of proving negligence by reference to expert medical testimony). Thus, he argues, "[w]hether it's possible or not to identify the cause of a Petitioner's unwillingness to participate in a mental evaluation this fact/opinion must be reported in the doctor's report and yet for Petitioner this was not the case[.]" According to Petitioner, "[a] doctor's opinion on whether it [is] possible this conduct [is] the consequence of a mental or physical disease, disorder or defect ... is clearly required by H.R.S. § 704–404(5)." [16]

### VI.

In its Answering Brief, Respondent initially contended (1) "[Petitioner] is judicially estopped from complaining about the [court's] findings that [Petitioner] was fit to proceed as [Petitioner] did not contest this finding" [17] and (2) "assuming, arguendo, that [Petitioner] is able to obtain plain-error review of the court's finding of fitness, it was within the [court's] discretion to find Petitioner fit to proceed on August 19, 2008." Neither Petitioner in his Application nor the ICA in its decision refer to plain error review. Instead, the ICA decided the merits of the questions raised on appeal. Accordingly, it must be concluded that, assuming its relevance, the ICA impliedly granted plain error review.

---

**16.** Petitioner argues that the judgment should be vacated, the case remanded, and that Petitioner should be re-examined.

**17.** However, it should be noted that Petitioner appeared pro se and it was two different district court judges who called for Petitioner's mental examination.

On the merits, Respondent argues the court did not abuse its discretion when it determined that Petitioner was fit to proceed with trial. Respondent asserts that although Petitioner refused to cooperate and thus prevented the court-appointed psychologist from completing the evaluations, Petitioner had an extended colloquy with the court at the August 19, 2008 hearing, which provided a reasonable basis for the court's conclusion that Petitioner was fit to proceed to trial.

According to Respondent, the inability of the psychologist to complete the examination due to Petitioner's unwillingness to cooperate does not prevent the court from reaching its own conclusion. Respondent contends that the ultimate determination of a defendant's fitness is reserved for the trial court, citing *State v. Madden,* 97 Hawai'i 53, 68, 33 P.3d 549, 564 (App.2001) (holding that the ultimate determination of a defendant's fitness to proceed is reserved to the trial court), and that inferences could be drawn from examiner's report and from Petitioner's conduct that Petitioner was not suffering from a physical or mental disease.[18]

### VII.

A review of the July 11, 2008 report indicates that there is no opinion offered by examiner in response to the directive in the June 20, 2008 Order that the report "shall include, if possible, an opinion as to whether [Petitioner]'s unwillingness was the result of physical or mental disease, disorder or defect." Likewise, there is no opinion rendered by examiner in response to the July 18, 2008 Order that, as provided in the already filed Order for Examination and Appointing Examiner(s), the report "shall include, if possible, an opinion as to whether [Petitioner]'s unwillingness was the result of physical or mental disease, disorder or defect." Here, no opinion was rendered on whether Peti-

tioner's unwillingness was due to a mental impediment, or on whether it was possible to render such an opinion.

### VIII.

In *Castro,* 93 Hawai'i 454, 459, 5 P.3d 444, 449 (2000) (Acoba, J., concurring) [*Castro I* ], in a concurrence subsequently approved and adopted by *State v. Castro,* 93 Hawai'i 424, 428, 5 P.3d 414, 418 (2000) [*Castro II* ], "the statutory criteria for determining whether a criminal defendant is legally competent to proceed to trial" were explained as follows:

> Pursuant to HRS § 704–403, the trial court must determine whether the defendant either (1) lacks capacity to understand the proceedings against him or her; or (2) lacks capacity to assist in his or her defense.

▉ When Petitioner first appeared in court, the two judges fulfilled "the duty of the trial court to order [s]ua sponte a hearing on competency when what is before it sufficiently indicates that the defendant may be incompetent to stand trial." *State v. Tyrrell,* 60 Haw. 17, 22, 586 P.2d 1028, 1032 (1978). In that regard, "the question [of] whether a defendant lacks capacity either to understand the proceedings against him or her or, alternatively, to assist in his or her defense *'is primarily a matter for the professional determination of the examiners appointed by the trial court[.]'* " *Castro II,* 93 Hawai'i at 426, 5 P.3d at 416 (emphasis added) (citation omitted). Further, "inasmuch as a trial court's ruling on competency entails its assessment of the reports and testimony of the panel of examiners, as well as its observational assessment of the defendant in court, its ruling [is] reviewable on appeal for an abuse of discretion." *Id.* (citing *State v. Janto,* 92 Hawai'i 19, 29, 986 P.2d 306, 316 (1999)); *see also Castro I,* 93 Hawai'i at 460,

---

**18.** Respondent also notes that the United States Supreme Court also leaves it to the trial court to decide whether a defendant is competent to conduct trial proceedings by him or herself, citing *Indiana v. Edwards,* 554 U.S. 164, 177–78, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). However, *Edwards* does not aid Respondent because the Court simply held that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under

[*Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id. Edwards* does not bear on the question at issue here—whether the court abused its discretion in determining that Petitioner was competent to proceed to trial without the benefit of an expert opinion regarding fitness as required by HRS § 704–404.

5 P.3d at 450 ("The standard for determining competence is statutorily mandated by HRS Chapter 704 and *primarily a matter for the professional determination of the examiners appointed by the trial court* in accordance with HRS Chapter 704. An abuse of discretion standard is appropriate because the determination *relies upon the trial court's assessment of the testimony of expert witnesses and its observational assessment of* the defendant.") (Emphases added.)

In *State v. Wilkerson*, 330 S.W.3d 851, 854–55 (Mo.App.2011), involving a similar competence statute,[19] the appellate court held in like circumstances that a trial court errs if it proceeds to trial without the report of a psychiatric expert. In Missouri, once the trial court is presented with sufficient facts to form reasonable cause to believe that the accused lacks the mental fitness to proceed, the court is mandated to order a mental exam. By statute, court ordered examinations "shall" be accompanied by a report or the examination. *See id.* (citing V.A.M.S. § 552.020). When the defendant in *Wilkerson* refused to cooperate with the psychiatric expert appointed to evaluate his competency, the trial court took no further action regarding the mental examination of the defendant and instead proceeded to trial. *Id.* at 853. *Wilkerson* held that the trial court erred in proceeding to trial because it was "bound by the dictates of the statute and could not proceed to a determination of competency until a ... mental health report was provided to and considered by the trial court upon completion of the mental examination." *Id.* at 856.

### IX.

Here, similarly, HRS § 704–404 provides that "[i]f the examination cannot be conduct-

ed by reason of the unwillingness of the defendant to participate therein, the report *shall* so state, and *shall* include, if possible, *an opinion* as to whether such unwillingness of the defendant was the result of physical or mental disease, disorder, or defect." (Emphases added.) The language of the statute is mandatory ("shall") with regard to the nature of the report when the defendant is unwilling to cooperate.

Although HRS § 704–404 is mandatory and the mandate is set forth in the court's orders, the statute and the orders were not followed. In his July 11, 2008 report, examiner did not opine as to whether Petitioner's refusal to participate was a result of a mental defect, nor did he explain whether providing such an opinion was possible. This did not comply with HRS § 704–404(5) or with the court's June 20, 2008 order. In his August 4, 2008 report, examiner again did not explain whether or not Petitioner's refusal to cooperate was due to his incompetency, and again did not state whether providing such an opinion was possible, contrary to HRS § 704–404(5) and the court's June 20, 2008 and July 18, 2008 orders.

■ As noted, the purpose of requiring an expert examiner's report on the question of competency is to "remov[e] from trial the concern that incapacity which is not readily apparent to lay observation will surface during trial proceedings or, much worse, after trial has ended." *Castro I*, 93 Hawai'i at 462, 5 P.3d at 452. Here, the risk that Petitioner was incompetent or that his incompetency would surface during trial was significant since, as early as May 2008, three months

19. Vernon's Annotated Missouri Statutes (V.A.M.S.) § 552.020 provides in relevant part:
 2. *Whenever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed*, he shall, upon his own motion or upon motion filed by the state or by or on behalf of the accused, by order of record, appoint one or more private psychiatrists or psychologists, as defined in section 632.005, or physicians with a minimum of one year training or experience in providing treatment or services to persons with an intellectual disability or developmental disability or mental illness, who are neither employees nor contractors of the department of mental health for purposes of performing the examination in question, to examine the accused; or shall direct the director to have the accused so examined by one or more psychiatrists or psychologists, as defined in section 632.005, or physicians with a minimum of one year training or experience in providing treatment or services to persons with an intellectual disability, developmental disability, or mental illness. *The order shall direct that a written report or reports of such examination be filed with the clerk of the court.* (Emphases added.)

before the court found that Petitioner could proceed to trial unrepresented, two judges had expressed serious concerns about Petitioner's mental health.

■ Although Petitioner twice refused to cooperate with examiner, the court apparently chose to rely on its own observations of Petitioner on August 19, 2008 in determining that Petitioner could proceed to trial, instead of requiring examiner to complete the report and render an opinion as to whether Petitioner's refusal to cooperate was due to incompetency or as to whether it was possible to render such an opinion. Respectfully, in proceeding without an expert's opinion, the court did not comply with HRS § 704–404(5) and did not enforce its own previous orders.

## X.

Arguably, the trial proceedings implicated Petitioner's fitness to understand the proceedings and to mount a defense. *Castro II*, 93 Hawai'i at 428, 5 P.3d at 418, citing HRS § 704–403. From the trial transcript it is apparent that Petitioner failed to understand fundamental matters. As noted above, on the first day of trial on October 30, 2008, Petitioner objected to the introduction of evidence on the ground that one of the charges against him had been dropped. Respondent indicated that it had initially charged Petitioner with two counts, but subsequently dropped one of the counts as duplicative.

However, when the court reconvened on November 18, 2008, Petitioner continued to object during the prosecution's case-in-chief on the ground that one of the charges against him had been dismissed. Petitioner told the court, "[T]he one evidence has been dismissed by the court, I don't think it should be entered now in evidence at all.... You know the only evidence that you could admit would be the Case No. 08158229. The other Case 081582230 has been dismissed by the prosecution. It would be inadmissible evidence." Respondent again explained that two charges had been erroneously duplicated, but that it was not submitting that there was any evidence tied to any particular charge. The court then denied the objection "because the evidence presented is one based on the case at trial today." However, after the court denied Petitioner's objection, Petitioner again objected, stating that Respondent's evidence was inadmissible. The court again denied the objection.

Petitioner also appeared not to understand the charge against him. During the August 19, 2008 hearing before the court, Petitioner told the court that he did not understand the charge. The court explained to Petitioner, "Possession is included, if you read the statute, in the promoting detrimental drug in the third degree." Then, during the first day of trial, when Petitioner was cross-examining Officer Leana, Petitioner insisted that he had not "promoted" any drugs. The prosecution objected to Petitioner's use of the word "promoted," and the court sustained the objection. After the court sustained the objection, Petitioner again asked Officer Leana whether Petitioner had been "promoting [marijuana] in any way." Respondent objected and the court sustained the objection. Later, when trial resumed on November 18, 2008, during the testimony of another of Respondent's witnesses, Petitioner renewed his objection that he had not "promoted" any drugs. The court denied the objection.

Respondent then made its closing argument. When it was Petitioner's turn to make his closing argument, the first thing Petitioner said was, "Yeah, but they're charging me with promotion of a detrimental drug. Is there a difference? Because when I was first arrested, I was charged with possessing...." The court then explained to Petitioner that "promoting" is only the title of the chapter with which he was charged, but that the substance of the charged offense was marijuana possession. It is apparent from this sequence of events that Petitioner went through the trial proceedings without understanding the charges against him and believing that he was innocent of the charges.

The foregoing underscores the need for an expert opinion in assessing whether Petitioner was fit to proceed and criminally responsible at the time of the incident. Whether Petitioner "lacked the capacity to understand the proceedings" or "lacked capacity to assist

in his defense," HRS § 704–403 [20], is "primarily a matter for the professional determination of the examiners." *Castro I*, 93 Hawai'i at 460, 5 P.3d at 450. As noted the purpose of the expert's report is to "remov[e] from trial the concern that incapacity" that is not "readily apparent to lay observation" may "surface during trial." *Castro I*, 93 Hawai'i at 462, 5 P.3d at 452.

### XI.

Therefore, while it is true, as Respondent contends, that the duty of determining Petitioner's fitness to proceed ultimately lies with the trial court, HRS § 704–404(2) requires the trial court to make that determination with the aid of expert opinion. *See Castro I,* 93 Hawai'i at 461, 5 P.3d at 451. However, examiner's reports did not address whether Petitioner was fit to proceed to trial, whether Petitioner could appreciate the wrongfulness of his conduct at the time of the alleged conduct, or whether it was possible to render an opinion regarding Petitioner's competency. Consequently, the court did not have the expert opinion it ordered as to these matters when deciding that Petitioner should proceed to trial. The court was required under HRS §§ 704–404(4) and (5) to obtain the expert's opinion as to fitness. Petitioner's refusal to cooperate did not relieve the court of that burden. Otherwise, the reports would not be "adequate for the purpose for which the examination and report[s] were ordered." Commentary to HRS §§ 704–404(4) and (5).[21] Respectfully, the court's decision to nevertheless proceed to trial under the circumstances was an abuse of discretion.

### XII.

In the absence of an express statement by an examiner that the examinee's refusal to cooperate is or is not the product of a physical or mental defect or that it is not possible to render an opinion one way or the other, a trial court cannot reasonably be assured that an evaluation under HRS 704–404(5) has been undertaken by the examiner. Correlatively, an appellate court cannot reasonably infer that the trial court has considered whether the examiner has made such a determination if the report is silent on this issue.

Physical and mental competence at the time of trial are central to the due process of law. *Castro I*, 93 Hawai'i at 461, 5 P.3d at 452. The due process guarantee would have little meaning if the trial court were to assume that an examiner performed the requisite evaluation in the absence of an opinion on that issue. Likewise, we cannot assume from the lack of any inquiry by the court that the court must have decided examiner performed the requisite evaluation and concluded that it was impossible to arrive at an opinion concerning the reason for Petitioner's recalcitrance, in the absence of a statement to that effect in the report. Nothing in the record indicates that examiner arrived at an *opinion* on that matter, or that, if he did, that that opinion was communicated to the court. The court must be fully informed of the scope of the examiner's opinion, inasmuch as the court may exercise other options in obtaining a further opinion.

If a defendant persists in refusing to participate in a personal examination and the examiner states that he or she cannot determine whether the defendant's lack of cooperation is due to a mental illness, then the court should order that the examiner render an opinion based on the "medical, mental health, social, police, and juvenile records, including those expunged, and other pertinent records in the custody of public agen-

---

20. HRS § 704–403 (1993) provides:

No person who as a result of a physical or mental disease, disorder, or defect lacks capacity to understand the proceedings against the person or to assist in the person's own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures.

21. The commentary to HRS §§ 704–404(4) and 704–404(5) states, in relevant part:
Subsections (4) and (5) state explicitly what the report of the examining physicians shall contain.... *These subsections are intended to assure the court and the parties 'that the report will be adequate for the purpose for which the examinations and report were ordered.'*
(Emphasis added).

cies," which, under HRS § 704–404(8),[22] the court ordinarily obtains and makes available for inspection to an examiner. As stated in *Wilkerson,*

> In the instant case, if Wilkerson had persisted in his refusal to cooperate with the mental health examining expert, *the expert could have utilized the transcript of the pretrial matters, police reports, interviews of witnesses, and any other documentation deemed relevant to the expert to form an opinion on the competency of Wilkerson.* Failing to make any additional effort to complete Wilkerson's mental competency evaluation and provide the trial court a section 552.020 report prior to trial, however, does not comply with the statutory mandate of section 552.020 and results in reversible plain error.

(Emphasis added.) This alternative method would appear appropriate for determining fitness and penal responsibility.[23]

### XIII.

It may be noted that Petitioner was sentenced to five days in jail. Accordingly, it would appear Petitioner has served his sentence. The parties did not raise, and the ICA did not decide, whether this moots the case.

▉▉▉ A case is not moot if the question presented is likely to recur but escape full review. *Okada Trucking Co., Ltd. v. Board of Water Supply,* 99 Hawai'i 191, 196, 53 P.3d 799, 804 (2002) (recognizing exception to mootness doctrine "where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit") (internal citation omitted). A case is also not moot if there is a reasonable probability that there will be prejudicial collateral consequences for the parties. *In re Hamilton ex rel. Lethem v. Lethem,* 119 Hawai'i 1, 193 P.3d 839 (2008).

▉▉▉ The question raised by Petitioner could recur but escape review. Whether the court abused its discretion in finding Petitioner fit to proceed is practicably susceptible to review only after conviction and sentencing. Thus, the exception to mootness for questions that could recur but escape review applies in this case.

▉▉▉▉▉ Further, unless reviewed, Petitioner's conviction is reasonably likely to result in collateral consequences. Criminal convictions have collateral consequences even after sentences have been served. *See Sibron v. New York,* 392 U.S. 40, 55–56, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("Although [a defendant's prison] term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties; civil rights may be affected. As the power to remedy an invalid sentence exists, a defendant is entitled to an opportunity to attempt to show that his conviction was invalid.") (internal citation omitted) (cited approvingly in *Spencer v. Kemna,* 523 U.S. 1, 25, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). Here, Petitioner could have been acquitted by reason of physical or mental disease, disorder, or defect, *see* HRS § 704–402 (1993),[24] rather than found guilty, or,

---

22. HRS § 704–404(8) provides in relevant part as follows:
 (8) The court shall obtain all existing medical, mental health, social, police, and juvenile records, including those expunged, and other pertinent records in the custody of public agencies, notwithstanding any other statutes, *and make such records available for inspection by the examiners.*
 (Emphasis added.)

23. In the situation where the examiner does not render any opinion, at least two alternatives are open to the trial courts. The trial court may appoint a different examiner, or, as set forth above, the court may order that the examiner attempt to render an opinion from matters obtained pursuant to HRS § 704–404(8).

24. HRS § 704–402 provides:
 § 704–402. Physical or mental disease, disorder, or defect excluding responsibility is an affirmative defense; form of verdict and judgment when finding of irresponsibility is made
 (1) Physical or mental disease, disorder, or defect excluding responsibility is an affirmative defense.
 (2) When the defense provided for by subsection (1) is submitted to a jury, the court shall, if requested by the defendant, instruct the jury as to the consequences to the defendant of an acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility.
 (3) When the defendant is acquitted on the ground of physical or mental disease, disorder,

conceivably, the charge could have been dismissed if Petitioner remained unfit to proceed.[25] Petitioner's conviction adds to his criminal record, and could result in lengthier future criminal penalties. These collateral consequences prevent Petitioner's case from becoming moot. *Cf. Lethem*, 119 Hawai'i at 8, 193 P.3d at 846 (holding case was not moot although domestic violence temporary restraining order had expired because there was a reasonable probability that the order could affect defendant's reputation).

## XIV.

 Petitioner is not foreclosed on remand from relying on HRS § 704–402(1), which affords an affirmative defense for "physical or mental disease, disorder, or defect excluding responsibility." As noted, although the court twice asked examiner to opine on whether Petitioner was able to appreciate the wrongfulness of his actions at the time of the charged offense, examiner did not proceed past the fitness issue. Because there was no expert opinion rendered concerning whether Petitioner could appreciate the wrongfulness of his actions at the time of the offense, Petitioner may still rely on HRS § 704–402(1) on remand. *See Castro I*, 93 Hawai'i at 464, 5 P.3d at 454 (explaining that "[the d]efendant [was not] foreclosed on remand from relying on the HRS § 704–402 defense" because the expert panel did not perform a responsibility examination).

## XV.

Based on the foregoing, we vacate the ICA's September 9, 2011 judgment and the court's November 18, 2008 judgment, and remand the case to the court for further proceedings consistent with this opinion.

Dissenting Opinion by NAKAYAMA, J., in which RECKTENWALD, C.J., joins.

In criminal cases where a defendant's fitness to proceed becomes an issue, the Ha-

wai'i Penal Code authorizes a trial judge to suspend proceedings in the case, Hawai'i Revised Statutes (HRS) § 704–404(1) (Supp. 2011), and "appoint three qualified examiners in felony cases and one qualified examiner in nonfelony cases to examine and report upon the physical and mental condition of the defendant." HRS § 704–404(2) (Supp. 2011). The Code also envisions a situation where a defendant is unwilling to be examined for this purpose: "If the examination cannot be conducted by reason of the unwillingness of the defendant to participate therein, the report shall so state and shall include, *if possible*, an opinion as to whether such unwillingness of the defendant was the result of physical or mental disease, disorder, or defect." HRS § 704–404(5) (1993) (emphasis added). The majority holds that the trial court abused its discretion in proceeding to trial in this case even though it was not possible for the examiner to include such an opinion. *See* Majority Opinion at 171, 277 P.3d at 265. In thus holding, the majority reads the words "if possible" out of HRS § 704–404(5); accordingly, insofar as this is the only issue before this court, I respectfully dissent.

As we have noted in the interpretation of statutes, "this court recognizes that its primary duty is to ascertain and give full effect to the intent of the legislature." *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 356, 903 P.2d 48, 52 (1995) (citing *Sol v. AIG Hawai'i Ins. Co.*, 76 Hawai'i 304, 307, 875 P.2d 921, 924 (1994)). "The intention of the legislature is to be obtained primarily from the language contained in the statute itself." *Kam v. Noh*, 70 Haw. 321, 325, 770 P.2d 414, 416 (1989) (citing *In re Hawaiian Telephone Co.*, 61 Haw. 572, 577, 608 P.2d 383, 387 (1980)). "The first cardinal rule of statutory construction is that legislative enactments are presumptively valid and, if possible, *every word*, clause, and sentence of a statute should be interpreted in such a manner as to give them effect." *Sato v. Tawata*, 79 Ha-

---

or defect excluding responsibility, the verdict and the judgment shall so state.

**25.** Pursuant to HRS § 704–406(3) (Supp.2011), if a defendant who has been found unfit to proceed regains his or her fitness to proceed, the

court may, "if [it] is of the view that so much time has elapsed since the commitment or release on conditions of the defendant that it would be unjust to resume the proceeding, [dismiss] the charge...."

wai'i 14, 22, 897 P.2d 941, 949 (1995) (emphasis added) (Ramil, J., dissenting) (quoting *Richardson v. City & Cnty. of Honolulu,* 76 Hawai'i 46, 54, 868 P.2d 1193, 1201 (1994) (internal quotation marks and brackets omitted); *see also Methven–Abreu v. Hawaiian Ins. & Guar. Co.,* 73 Haw. 385, 392, 834 P.2d 279, 284 (1992) (quoting *Camara v. Agsalud,* 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984)) (noting that "courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute"); *The King v. Kahele,* 7 Haw. 388, 389 (1888) ("[W]e are bound to give effect to every word of a statute if it is possible so to do.").

In reading HRS § 704–404(5) so as not to exclude any words, I note that it contains two discrete requirements in relation to the examiner's report. First, "[i]f the examination cannot be conducted by reason of the unwillingness of the defendant to participate therein, the report shall so state[.]" During both of the attempted examinations on July 11, 2008 and August 4, 2008, Tierney stated that he was unwilling to participate on account of his Fifth Amendment rights and then left the interview room; both of the examiner's reports state this. Second, if the defendant is unwilling to participate, "the report ... shall include, *if possible,* an opinion as to whether such unwillingness of the defendant was the result of physical or mental disease, disorder, or defect." (Emphasis added). Although "shall" is a mandatory term, as the majority points out, Majority Opinion at 169, 277 P.3d at 263, the statute plainly requires such an opinion *only when it is possible to include such an opinion.* Given the circumstances of both aborted examinations—both times, Tierney left after two minutes—and the fact that, as stated in the two reports, no other psychiatric records were available for review, it appears from the record that it was not possible for the examiner to form and include an opinion as to whether Tierney's unwillingness "was the result of physical or mental disease, disorder, or defect."

Nevertheless, the majority states that in both the July 11, 2008 report and the August 4, 2008 report, "there is no opinion offered by [the] examiner in response to" the court's order, which mirrors the language of the statute, that the report "shall include, *if possible,* an opinion as to whether defendant's unwillingness was the result of physical or mental disease, disorder or defect." Majority Opinion at 168, 277 P.3d at 254 (emphasis added; internal quotation marks omitted). In holding that the trial court abused its discretion in proceeding to trial in this case, the majority ignores the "if possible" language in the statute and requires medical examiners appointed under HRS § 704–404 to produce opinions even when they are clearly unable to do so.

Additionally, I must also note my disagreement with the majority's analysis of *State v. Wilkerson,* 330 S.W.3d 851 (Mo.App.2011). In that case, the Missouri Court of Appeals vacated Wilkerson's conviction and sentence because the trial court erroneously proceeded to trial without first receiving the report of mental examination it had ordered regarding Wilkerson's fitness to proceed. *Id.* at 852–53. As in this case, a mental health examiner had been appointed by the court to examine Wilkerson; at the correctional center, Wilkerson refused to meet with the examiner and undergo examination. *Id.* at 853. Instead of submitting a report, the examiner sent a letter to the court explaining that he was unable to examine Wilkerson; the court took no further action regarding the examination and proceeded to trial. *Id.* The appellate court vacated the judgment of the trial court there because the examiner simply "failed to provide a mental health report" as required by the statute and the trial court found Wilkerson fit and proceeded to trial without having received or considered the report. *Id.* at 854. Moreover, the statute at issue, Vernon's Annotated Missouri Statutes (V.A.M.S.) § 552.020, does not provide for a situation where the defendant is unwilling to undergo the examination. V.A.M.S. § 552.020.2 only requires that when a psychiatrist or psychologist is ordered to examine a defendant for fitness to proceed, "[t]he order shall direct that a written report or reports of such examination be filed with the clerk of

the court." According to V.A.M.S. § 552.020.3,

> A report of the examination made under this section shall include:
>
> (1) Detailed findings;
>
> (2) An opinion as to whether the accused has a mental disease or defect;
>
> (3) An opinion based upon a reasonable degree of medical or psychological certainty as to whether the accused, as a result of a mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense;
>
> (4) A recommendation as to whether the accused should be held in custody in a suitable hospital facility for treatment pending determination, by the court, of mental fitness to proceed; and
>
> (5) A recommendation as to whether the accused, if found by the court to be mentally fit to proceed, should be detained in such hospital facility pending further proceedings.

Neither subsection 3 nor any other part of V.A.M.S. § 552.020 contemplates what the examiner may do in the event that the defendant is unwilling to undergo examination. Thus, V.A.M.S. § 552.020 and HRS § 704–404 are not "similar competence statute[s]" in this regard as the majority posits, Majority Opinion at 169, 277 P.3d at 263, and when the majority states that "[t]he language of [HRS § 704–404] is mandatory ('shall') with regard to the nature of the report when the defendant is unwilling to cooperate[,]" it ignores the "if possible" language in the statute. Majority Opinion at 169, 277 P.3d at 263. Thus, I cannot say, as the majority does, that the examiner "did not comply with HRS § 704–404(5) or with the court's June 20, 2008 [and July 18, 2008] order[s]." Majority Opinion at 169, 277 P.3d at 263.